# W. B. WALKER, EXECUTOR, v. W. H. HOWARD AND OTHERS.

1. Trespass to try title may be maintained in the courts of this State upon a merely equitable title.

2. Errors in the original form of action or in the misjoinder or nonjoinder of parties may be corrected by amendment.

3. In this case the court quotes with approval the rulings in Henderson v. Kissam, 8 Texas, and in Smith v. McGaughey, 13 Texas, on the subject of amendments, but adds that repugnance in pleading cannot be tolerated, and commends the practice of imposing terms upon parties who introduce substantial changes in their pleadings.

4. In a suit against a surviving husband's vendees, by the heirs of his deceased wife, to recover her interest in community real estate, evidence by the defendants that community debts were outstanding after the death of the wife would be competent in connection with further proof that the husband sold the land and applied its proceeds in liquidation of such debts; but, in the absence of such further proof, it seems that it was not error to exclude evidence of the indebtedness.

5. In an action for partition the plaintiff need not deraign his title beyond the common source under which both he and the defendant claims.

6. A defendant in a suit for partition is estopped *in pais* from denying the title of his vendor, which he had accepted, and under which he obtained and held possession of the land. But he might set up an outstanding title, if he showed that he claimed under it, and not under the title relied on by the plaintiff.

7. The legal rights of a surviving husband in community real estate could not be divested by the last will and testament of his wife; and it is not clear that an administration upon the estate of a deceased wife could affect her surviving husband's power over her portion of the community property.

8. Nine years having elapsed after the death of a married woman before her surviving husband sold and made full conveyance of land pertaining to their community estate, and administration of her estate having been had after her death, it is but fair to presume that the community debts had been paid before the sale, or at least that they were barred by limitation.

9. A surviving husband has the right to sell community real estate, not only to pay community debts, but also to reimburse himself for his separate funds used in payment of such debts; though, if there be administration pending on the estate of his deceased wife, it would, perhaps, be incumbent on him to present his claim to her personal representative, for allowance and payment.

10. Nothing, it seems, is to be presumed in favor of children who sue the *bona fide* vendee of their father for the community interest of their mother; and in the present case it is held incumbent on them to account for what they have received of the community property, and to show that they have not received their full shares, after deducting the community indebtedness. (Burleson v. Burleson, 28 Texas, 383, cited by the court.)

11. The act of August 26, 1856, (Paschal's Digest, article 4647.) gives the surviving husband almost unqualified power to sell the community estate.

12. In 1846, during the lives of B. and his wife, he acquired in his own name, but by onerous title, a tract of land; and in 1860 he sold and conveyed the entire land to a *bona fide* purchaser. In 1851, B.'s wife died, leaving a will, which took her estate from the control of the probate court, and by which she appointed an executor, and directed him to inventory her separate and community estate, and that her husband should state all community debts and select enough community pro-

XXXIV—30

perty to pay them, and her remaining estate should go to her three children. The will provided for a distribution of the estate as each child should become of age or marry, when the part falling to such child " should pass to and vest in such child, to his or her own proper use, forever ;" but, until such distribution, the husband was to retain the management of the property. The children, after their father's death, sued his vendee, to obtain, by partition, their mother's community interest in the land. *Held*, that such legal title as vested in B., by the conveyance made to him in 1846, remained in him until his sale in 1860, though subject to an equitable estate in the plaintiffs to their mother's community interest, controlled by the devises of her will ; and the question is, how far this equitable interest of the plaintiffs affects the *bona fide* purchaser from their father.

13. Although in the case above indicated the plaintiffs are chargeable with want of diligence in failing to protect themselves against their father's sale, by means of the remedies afforded by the act of August 26, 1856, (Paschal's Digest, articles 4649 and 4650,) yet, under the circumstances, they should not be debarred of all relief, and they will be decreed partition as against the defendant, upon repaying to him one-half of the purchase money paid by him to their father, with interest since his purchase at eight per cent. per annum.

APPEAL from Harris. Tried below before the Hon. George R. Scott.

The subject matter of this well-contested case was a tract of thirteen hundred acres of land in Harris county, conveyed by C. W. Buckley to King Holstein, by warranty deed of date March 8, 1860, for the consideration of three thousand five hundred dollars.

This tract was part of a larger tract, comprising fifteen hundred and fifty-five acres, conveyed to C. W. Buckley in 1846 by the administrator of Richard Vince, the original grantee from the government. For five or six years previous to this conveyance, the land appears to have been occupied by Buckley and his first wife, Lavinia J. Buckley, the mother of the appellees and plaintiffs in this cause; but by what right they held the land, anterior to the conveyance of 1846, does not appear in the record. That conveyance was on a consideration of one thousand dollars.

Mrs. L. J. Buckley died in September, 1851, leaving two sons and one daughter, all minors, and also leaving her last will and testament, executed in the preceding March. As some of the most interesting questions of this case arise from or are affected by this instrument, a somewhat full abstract of it is attempted.

The preamble asserts that the will is made " with the consent and approbation " of C. W. Buckley, the husband of the testatrix.

Article one constituted C. W. Buckley " guardian, without bond and security, of the persons and property " of the three children.

Articles two and three gave directions respecting their education.

Article four appointed Dr. Wm. McCraven " special executor for the particular purposes hereinafter enumerated and specially required of him, without bond and security."

Article five devised to the children the separate property of the testatrix, consisting of thirteen slaves.

Article six is as follows : " It is my will and my desire that my share of the property common to my husband and myself, acquired during our marriage, be charged with the debts existing at my death, contracted during our marriage by myself or my said husband—remainder, after the discharge of said debts, I will and bequeath to my children."

Article seven desired that the property bequeathed to the children should be kept together and be prudently managed by Buckley, and concluded with providing that " in case any of my said children shall die during minority, and without marriage, then his or her share shall pass to and vest in the survivor or survivors, or their descendants."

Article eight regulated the distribution of the property to each child as it should arrive at the age of majority, or should marry. This entire article is transcribed in the opinion, and need not, therefore, be inserted here.

Article nine requested Buckley, soon after the death of the tes-

tatrix, to have the will probated in the county court, and desired that the executor should qualify soon thereafter.

Article ten provided that Buckley and the executor, within a year after the probate, should make and file in the county court an appraised inventory of the property devised, distinguishing the separate from the common property; and that the executor should make and return to the court a partition of the common property between the testatrix and her husband.

Article eleven desired Buckley, within one year after the probate, to return a schedule of the community debts outstanding at the death of the testatrix.

Article twelve empowered Buckley to sell, either at public or by private sale, all or a sufficiency of the testatrix's community interest, to pay the community debts; or authorized him to retain for all of such debts as he should assume, equal value out of the testatrix's community interest, to become his in fee simple—provided, he should return to the county court, for record, an account of the debts assumed and of the property retained by him.

Article thirteen granted to Buckley the power to appoint another executor, in the event of Dr. McCraven's refusal or inability to act.

Article fourteen exempted the will and estate from further control of the probate court than provided for in the will itself.

Article fifteen fully discharged the executor from further duty and all liability, as soon as he should return the partition.

Article sixteen applied the provisions of the will to such of the children as should be living at the time of the testatrix's death.

And article seventeen, in conclusion, provided that Buckley should "have the free election or choice of any or of so much of my common property as he may wish to retain by virtue of article twelve of this will and testament."

At the September term, 1851, of the county court, the will was probated and the executor qualified.

To the January term, 1852, of the court, Buckley and the exe-cutor returned an inventory of the separate and of the community property, as required by the will. The common property consisted of eight slaves, valued at $4025 ; numerous tracts of land, estimated to an aggregate of about $15,000, of which the Vince tract of 1555 acres, comprising the subject matter of this suit, was one tract, and was valued at $1 per acre ; personal property to the value of about $1500 ; and unadjusted interests in land contracts, not capable of appraisement at that time.

On the seventh of September, 1852, Buckley filed his account of community debts outstanding at the death of his wife, and amounting to $3591 76 ; and accompanying the account, filed a statement of community property selected by him for payment of the debts; which property included the community slaves, the homestead, and some personalty, amounting in all to $7200, at the inventory valuations.

After the death of his wife, Mrs. L. J. Buckley, Judge Buckley, as appears by the parol evidence, made extensive purchases of lands and slaves on credit, and the war caught him very largely involved.

Previous to his death in 1865, he was largely insolvent, most of his lands being mortgaged for purchase money, and his assets not likely to pay a third of his liabilities.

On the eighth of March, 1860, by deed of general warranty, and for an expressed consideration of three thousand five hundred dollars, Judge Buckley conveyed the land now in controversy to King Holstein, the appellant's testator.

The opinion of the court clearly states the character of the suit, and how the appellant became a party. The sixteen hundred dollars for which he is held accountable in the opinion were the proceeds of timber taken from the land, paid to appellant by Holland, to whom he had bargained the land.

Both of the sons of Mrs. L. J. Buckley died shortly after the

death of their father ; one of them unmarried, and the other leaving a widow, but no children. This suit was brought by the widow of this son and by the daughter of Mrs. Buckley, the testatrix. The daughter had married W. H. Howard, who therefore joined in the suit.

The cause was tried in the district court at the May term, 1870. The jury found for the plaintiffs the half of the land and improvements, as claimed by them, and also six hundred dollars, damages. Judgment was rendered accordingly and partition decreed. Holstein's executor brings the case to this court by appeal, and assigns errors indicated in the argument of counsel and the opinion of the court.

The legal questions involved in this cause are of more than ordinary importance and interest, and can only arise in those few of the States which maintain the principles of the civil law in relation to marital rights. They are questions, too, which have been but rarely and somewhat dubiously discussed in the reported adjudications of this State, and are liable to recur in our practice; for which reasons an unusually full report is given of this cause.

*James Masterson*, for the appellant, insisted that the Vince title did not pass to Buckley by the unconfirmed deed of Vince's administrator, but was still outstanding in Vince's heirs; and that it was therefore error to admit the administrator's deed as evidence, when objected to by appellant. (Davis v. Stewart, 4 Texas, 223; Yerby v. Hill, 16 Texas, 381; Neill v. Cody, 26 Texas, 289.)

The counsel next argued that it was immaterial that the appellant set up no claim under Vince or his heirs, and cited King v. Elson, 30 Texas, 252.

Next the counsel proceeded to discuss the leading questions in the case, as follows :

The second charge asked was refused, and as it states a very important principle, it will be given in full. The charge sought is as follows :

" 2. If the jury believe from the evidence that the land in controversy was owned by plaintiff's mother and C. W. Buckley, father of plaintiffs, at the time of the sale by Buckley to Holstein, and that he had minor children living by plaintiff's mother, and that the community was indebted at the time, then C. W. Buckley, as surviving husband, had the right to sell the community property."

For appellant it is contended that this principle is fully sustained by the cases of Jones v. Jones, 15 Texas, 148; Good v. Coombs, 28 Texas, 50; Burleson v. Burleson, 28 Texas, 418, 419.

In the case of Jones v. Jones, above cited, Hemphill, Ch. J., on bottom of page 158 and top of 149, 15 Texas, says: "What were the motives or inducements to the various sales made by the survivor, we are not informed. They may have been made to discharge contracts made prior to the death of the wife, or to satisfy legitimate demands against the community. If so, it is apprehended they could not be disturbed."

In the case above cited of Good v. Coombs, on page 50, 28 Texas, Coke, J., uses this strong language: " The right to make sales of the community property would seem to be a necessary consequence of his obligation as survivor, to discharge the debts against the partnership, because usually it is only by that means that these debts can be paid."

In the case, 28 Texas, on page 418, Smith, J., in delivering the opinion of the court, in speaking of the rights of heirs to recover community property, says: "If they desire to enforce them at this late day, they must be prepared to show and do equity themselves. Their rights of inheritance in the community property of their father and deceased mother were not unqualified and absolute, but only attached upon the residue that might be left in the hands of their father after extinguishing the community debts, if there were any. There is no evidence of the community being free of debt, or that there was an administration on her estate. In the absence of any administration, the surviving husband was,

for some purposes, the representative of the community, and any sales made by him in good faith and for the purpose of paying the community debts, or of reimbursing himself for community debts paid by him with his separate funds, would be sustained. And we are of the opinion that the plaintiffs and intervenors must show the amount of community property left at the death of Margaret Burleson, deceased, and what has become of it. They must account for what they have received of the community property, and by way of advancement, from her or John Burleson, Sr., if anything, and if it be made to appear that either has received an amount equal to his or her share in the community, after the payment of debts, then he or she would not be entitled to any part of the land."

This was the established law prior to the statute of 1856, but the Legislature, to forever put at rest the question of the right of the survivor of the community to dispose of the community property, and put a stop to the unseemly practice into which some individuals, after the death of their parents, had fallen, of applying to the courts of the country to upset *bona fide* sales made by one of their parents after the death of the other, enacted the law entitled "An act supplementary to the act of March 13, 1848, entitled 'an act better defining the marital rights of parties,'" which was passed on the sixteenth of August, 1856, and took effect from passage. Article 4647, Paschal's Digest, 780, is in these words:

"It shall not be necessary for any surviving husband to administer upon the community property of himself and his deceased wife, but he shall have the exclusive management, control and disposition of the same after her death, in the same manner as during her life, subject to the provisions of this act."

"This law applies to community estates not administered upon at the time of the passage of the act, as well as those arising afterwards by the death of the husband or wife subsequent to its pas-

sage." (Sossaman v. Powell, 21 Texas, 667, opinion by Hemphill, Ch. J.)

At the date of the sale by Buckley to Holstein, the title, if the title was ever in Buckley, was still in him. Mrs. Buckley's will in no way gave any directions for the disposal or sale of the property, but in this particular she left it subject to the law. Had she been living, can it be questioned that Buckley's deed alone would have conveyed the property to Holstein? Then under the statute giving the survivor the right of "control and disposition in the same manner as during her life," Buckley had the right to dispose of all the community property. Nor can it be said no inventory had been returned; an inventory was already returned, and why the vain and foolish ceremony of returning another inventory? But under article 4649 of Paschal's Digest, it plainly appears that the husband's failure or neglect to return an inventory in no way affected his right of disposition, for it provides a method to compel him to return such an inventory, upon the complaint of any one interested. Immediately upon the death of one of the connubial partners, the title to the community estate vested in the survivor, and such survivor, like the survivor of a common partnership, had the right to dispose of the effects of such partnership, without let or hindrance; but the heirs of the deceased partner or creditor could, by proceeding under the statute, require an inventory, and might also require a bond. "The community property belonged to the surviving husband, and was not subject to administration." (Wall v. Clark, 19 Texas, 324.)

This view of the law was sustained by our Supreme Court as late as 1866.

"But upon the contingency named in Oldham & White's Digest, articles 813, 814, (Paschal's Digest, articles 4649, 4650,) the county court had authority to grant administration on the estate of O. B. Brackett, deceased, (the husband,) as in other cases provided by statute, and we are of opinion that the moment adminis-

tration on the estate was opened, then the appellee ceased to represent the estate, as the survivor, and could not be further proceeded against by suit or execution, as such surviving representative. The whole of the estate then passed legally from her hands as surviving wife, under the control and jurisdiction of the county court, to be disposed of in compliance with the laws governing estates in that court." (Tucker v. Brackett, 28 Texas, 340.)

There certainly was no administration upon Mrs. Buckley's estate when Buckley sold to Holstein. By article fifteen of her will, the duties of her executor had ceased, the contingency therein contemplated having occurred. Article fourteen of Mrs. Buckley's will took the whole management of the will and the property out of the county court. Article eighth of her will starts out by saying that "when my children, respectively, shall arrive to the age of majority, or shall marry," certain things shall be done—after doing the which, not before, the bequeathed portion shall pass to and vest in the child. Now, when did the estate pass and vest? Where was the title to the community estate from the day of the death of Mrs. Buckley up to eighth of March, 1860, the time that Buckley sold to Holstein, under power of disposition which he had already, if the community was indebted before the act of 1856, and which power he had after the act of 1856, whether the community was or was not in debt? Clearly in C. W. Buckley. His was the legal title. Heirs of the wife had only an equitable interest, and when they come to seek equity, they must first do equity.

Mrs. Buckley, the mother, only could will, and did will her separate estate and her share of the community; but she in no way could, or did take away any power of disposition which by law her surviving husband had over the community estate; and it is wholly immaterial whether this power was in the husband at the time of her death, or subsequently became invested in him by act of the Legislature. (Sossaman v. Powell, 21 Texas, 667.)

Before the act of 1856, the survivor could dispose of the community property if there were debts, or to idemnify himself for liabilities of the community. After the act of 1856, he could so dispose of the community estate, debts or no debts. That statute enlarged the power he possessed before its passage, and was intended to protect purchasers from the survivor of the matrimonial partnership, and heirs took subject to the exercise of the power of sale, which, when exercised, terminated their estate in the community sold. Heirs had their remedy to prevent sale, or to require bond, but until they proceeded under articles 4649 and 4650, Paschal's Digest, the power of disposition existed, and might be exercised by the survivor. This view is strengthened by the last paragraph of article 4648, Paschal's Digest. "And he shall be liable to the amount of said inventory and appraisement, at all times for the interest of said heirs, in said community property." Now if the heir could and did take the property itself, why and how should the survivor "be liable for the interest of said heir in said community property?"

The community estate was never divided, nor was there a severance of title, except to so much thereof as C. W. Buckley took under the twelfth clause of Mrs. L. J. Buckley's will. All the balance of the community property remained undivided, the legal title being in the name of C. W. Buckley, and an equity or right to partition, to the devisees of Mrs. Buckley, (assuming that the proof does not show the title to be in Richard Vince's heirs,) but which equity was subject to be defeated by the *bona fide* sale by the survivor of the matrimonial partnership, and his power of sale existing in the lifetime of his wife, was continued after her death in two different methods, each equally binding upon the children, namely: First, under the law as it existed prior to 1856, to enable the survivor to pay off community debts, or to indemnify the survivor for debts, if paid by him from his separate means, and this, whether actually paid, or liability existed to pay.

Second, under the act of 1856, and until actual partition and severance of such community property between the survivor and the heir or devisee, the right continued, and might be exercised at any moment by such survivor of the matrimonial partnership; and, in the case now at bar, such power and right was in fact exercised by the survivor, by his deed and sale to Holstein, on the eighth day of March, 1860. That deed conveyed exactly what it purported to convey, namely, the entire legal estate, if such existed, in C. W. Buckley, or his wife, to the whole of the land, and not merely a moiety thereof.

The third and fourth charges, asked and refused, will be considered together.

The third charge asked is in the following words, viz:

" If, at the time Buckley made a warranty deed to Holstein, he was acting in good faith, and Holstein bought in good faith, then the title vested in Holstein, and you will find for his executor."

(This charge, of course, intended to refer to the Buckley title.)

Conceding now, for the sake of argument, that C. W. Buckley had the legal title to the land, which he sold and conveyed to Holstein, as per his deed dated eighth March, 1860, for appellant it is confidently insisted that he is entitled to all the land conveyed and covered by said deed. We invoke the principle so long established in equity, that " where the courts of equity are called on to administer justice upon grounds of equity, against a legal title, they allow a superior strength to the legal title, when the rights of the parties are in conscience equal. * * * It stands upon the maxim that where the equity is equal the party in possession shall prevail. *In æquali jure melior est conditio possidentis.*" (See Story's Equity Pleadings, 551, §§ 604, 604a, 804, and note 3; also, 1 Story's Equity Jur., 74, §§ 64, 434, 480; 2 Story's Equity Jur., §§ 1502, 1503 and 1503a; George v. Watson, 19 Texas, 369.)

Assuming that the Vince deed passed title, the inquiry is,

in whose name then was the title? Of course, in the name of C. W. Buckley. A purchaser going to the records to examine, would find the title standing in the name of C. W. Buckley. Now, is it necessary for him to inquire whether Buckley was a bachelor, a married man, or a widower; and whether he had children or grand children; or whether the mother was dead or alive; and whether any of the children died before their mother; and who were the heirs at law of such deceased child? We think not. Where the law grants land to a head of a family so much, and to a single man so much, the patent necessarily informs all persons whether the grantee was a married man or a single man; but such is not the case in a deed between parties. All the deed shows is the name of the seller and purchaser, the consideration paid, the property conveyed, and date of the deed. Unless the party claiming the equitable interest, as contradistinguished from the legal title, can prove notice of the existence of such facts as would entitle him to recover, on the part of the purchaser—such purchaser, being a *bona fide* purchaser, is surely entitled to protection; and where he has paid a valuable consideration, and is in possession, he will be maintained in that possession until a superior equity be shown; and even then, where he has the legal title and an equitable title, the courts will leave the parties where they find them. This question may appear to have been otherwise decided in the instances of homesteads, conveyed by the husband alone, but a close attention to the cases will show that the actual possession and occupancy of the premises was held to be notice, or equivalent to notice. Hence it follows that where there was no such actual possession and no notice, by record of title, or actual notice of the facts, the recorded title is the one to which purchasers must look.

In this case there was no deed of record or other notice to Holstein that such a person as L. J. Buckley ever existed. She was dead long before he purchased from the person in whose name the title appeared. The property purchased was not occupied by

Buckley when he sold it to Holstein. If it be replied that the purchaser was bound to examine the probate records, we reply no such rule has been established in this State. But if such be the true rule, what information could any one get by examining the will of Mrs. Buckley? None, except she had been and was no more; that she made known how she wished her separate property to go, and how her part of the community property was to go. But the property in controversy in this suit is not mentioned in the will. There is nothing but the declaration by the appraisers and by the executor that she had any interest in this piece of property. No inventory as required by the law. The inventory returned is not sworn to by appraisers appointed by the court, as was required by the law. (See Paschal's Digest, article 1299, 309.) So far as the will disposed of the community property (except a small portion directed to be taken by the survivor for debts), it went exactly as the law would have given it. So the disposition of it left it where the law would have placed it without a will—undivided, particular portion unascertained, the whole title in the survivor of the community, subject to be disposed of by him at any time before the severance of interest and title. After division, then, the community character was destroyed, and each partner, or the survivor, and those taking the share of the deceased partner, held in severalty.

The eighth charge asked. is believed to be the law. (See Trammell v. McDade, 29 Texas, 364, 365, 366, 367, and authorities therein cited.)

·That case, (Trammell v. McDade,) it is true, applied more particularly to personal property, but the principle is the same.

So one tenant in common cannot bring an action of trespass against another for entry upon and enjoyment of the common property. (See 4 vol. Kent's Commentaries, 389, 8 edition.)

One tenant cannot sue his fellow except in case of actual ouster, either proved or admitted by the pleadings. (See 2 vol. Hilliard on Torts, 282.)

So trespass *qu. cl. fr.* cannot be maintained by one tenant in common of land against another, for entering upon the common property under a claim of exclusive ownership of the whole, and cutting and carrying away all the timber thereon. (2 Hilliard on Torts, 282; 1 vol. Washburn on Real Property, 419, § 9.)

But one tenant in common cannot maintain an action in the nature of waste against the other for cutting down trees of a proper age and proper growth. (Bacon's Ab. Title Joint Tenants, 307.)

By the common law joint tenants and tenants in common had no remedy against each other, where one alone received the whole property of the estate. (Bacon's Ab. Joint Tenants, 304 )

One tenant in common (or joint tenant or parcener) cannot bring trover against his companion, because they are both equally entitled to the possession. The possession of one is the possession of both. (Bacon's Ab., same title as above, 306.)

To the same effect see book 2, vol. 1 Blackstone, Chitty's edition, side p. 183, top pp. 148, 149.

The fifth error assigned is " the verdict of the jury is contrary to the law and contrary to the evidence." ·

Notwithstanding the errors of the court, both in its charges given and in refusing charges asked, appellant submits that under the evidence and pleadings the jury should have found for defendant, Walker, as executor of Holstein, for the land as against plaintiffs, and for the full amount of value of timber sold by Holland without right, and for use and occupation as against Holland.

First, as against plaintiffs as to the land.

It is thought that the authorities cited and arguments used in support of the proposition, " that it was incumbent on plaintiffs to recover upon the strength of their own title, and not upon the weakness of defendant's title," are conclusive. Also that it has been demonstrated that plaintiffs failed to make out their title, either by regular chain of title deraigned from the government to

their mother, L. J. Buckley, or by proof of any such equitable title as would entitle them to recover—the Vince deed being a nullity, because it was not shown that it was authorized, and because it nohow appeared that the county court had ever confirmed the sale, if such sale were made. Until which confirmation and deed and compliance with terms of sale, the title remained in heirs of Vince. But whether this be so or otherwise, that admitting, for the sake of argument, that Mrs. L. J. Buckley, at the time of her death, was entitled to a community interest in the land, and that she devised same to plaintiffs, appellant confidently believes that the position herein discussed, namely, that the survivor of the matrimonial partnership, C. W. Buckley, had, by reason of the existence of facts of indebtedness and liability of community property, evidenced by the suit and liability of said survivor, alleged and pending, as per the proof excluded, had the right to sell and dispose of the community property; that this right existed prior to the statute of 1856, and that that statute was applicable alike to estates of persons dying prior as well as subsequent to its passage; that that statute only prevented the death of the wife from operating a revocation of the authority to sell, which power the husband had during the wife's life, without her joining in the deed to the community property; that at once, after the death of the wife, the husband, by virtue of the statute, could dispose of the community estate, and that this power existed until the creditors or heirs availed themselves of the remedy provided by that statute to compel the surviving husband to give bond and security; that inasmuch as Mrs. Buckley's will could only operate upon her separate property, and her interest in the community property, that so far as the community property was concerned, the devisees took subject to the superior right existing in the husband during the wife's life, of disposition, which right of disposition was continued by the statute of 1856; that in no sense was there administration upon the estate of Mrs. Buckley; her will

expressly provided against administration ; therefore, to carry out the will, and the law of 1856, the one inventory was ample, and there could be no necessity for the husband to return the identical property again. The power of disposition, however, is in no way dependent upon the return of an inventory. The power existed prior to the death ; was continued after the death, and might be exercised by the survivor at any time before administration, or before the creditors, or other persons interested in the estate, took steps to require a bond, or, in default of giving bond, before forcing ordinary administration.

*Gray & Botts*, for the appellees, first noticed the exceptions taken by the defendants in the court below to the admission, as evidence for the plaintiffs, of the conveyance from Vince's administrator to Buckley, without previous proof of the proceedings in the administration, and of the regularity of the sale, the order of sale, and its confirmation by the county court. Counsel insisted that as Holstein claimed under deed from Buckley, the appellant, Holstein's executor, and Holland and wife, his vendees, were estopped from controverting the deed under which Buckley claimed. (Wilson v. Palmer, 18 Texas, 595; Paschal v. Acklin, 27 Texas, 191; Hill v. Portis, 14 Texas, 75; Burleson v. Burleson, 28 Texas, 383; Comstock v. Smith, 13 Pick., 116; Williams v. Curl, 27 Georgia, 512; Woolfolk v. Ashby, 2 Metcalf, Ky., 288; Cox v. Lacey, 3 Littell, 334, and Case v. Benedict, 9 Cushing, 540.)

Passing from the questions of practice, the counsel proceeded as follows : In this case the main point that seems to be relied on is founded on the idea that no recovery can be had by children of a marriage, unless they first prove a negative, that no debts existed against the community. We submit, in answer, that such a proposition in general is contrary to first principles. How can

such a negative be established, unless some proof of the existence of debts be given?

2. As applicable to this case the appellees claimed under the will and administration on their mother's estate. That record showed what debts existed, or were admitted to exist, at her death, by the return made by the husband, according to the provisions of the will, and ample property was selected from the community for their payment. Surely, after the lapse of nine years before the sale to Holstein of this land, and seventeen years before this suit was brought, every presumptiom existed of the payment of all debts. Limitation barred them in four years after her death on simple contracts, and even judgments (of which none are pretended) in ten years. The evidence, then, did negative the existence of debts contracted during the marriage, as far as it was possible to do so.

3. If there be any foundation for such doctrine in the ordinary case of community rights, yet we submit that the fact of a will and administration of the estate of the deceased wife, and their claiming through the will, takes this case out of the general category in which decisions have been made by this court. It is not the ordinary case of heirs of a decedent claiming community property against the right of survivorship of the married parties, and against a deed of such survivor. The will was made with the assent of the husband. Another executor was appointed. The surviving husband acted under the will, and abandoned the right of survivorship under the community law, taking benefit under the will and administration. His power over the half share of the community estate remaining after his selection of property to pay all debts then existing, as reported by himself, no longer existed. It belonged more properly to the executor, being vested in him by the will.

All these matters appeared of record in the court for administration of estates, were accessible to purchasers, and notice to

them, as in any other instance of a party purchasing property really belonging to a decedent. Now, there may be reason in the doctrine that a surviving husband or wife may sell the community estate for payment of debts, where there is no administration, as held in some of the cases. (Jones v. Jones, 15 Texas, 143; Good v. Coombs, 28 Texas, 50; Burleson v. Burleson, 28 Texas, 418.) That doctrine applies to other cases than of sales by the survivor of a marriage. (Berry v. Young, 15 Texas, 369.) And it may possibly be presumed to have been done for the honest purpose of paying debts, though we find no decision going so far.

It is doubtless true, also, that the heirs would be bound by the warranty of the ancestor to the extent of assets received by them from the estate of the survivor. (Maxwell v. Guyton, 20 Texas, 203; Monroe v. Leigh, 15 Texas, 519.) But we apprehend that the reason of such doctrine entirely ceases and is negatived where there has been actual administration on the estate under a will, with executor appointed, and acts done in the administration, showing of record what the debts were, and that provision ample for their payment had been made, nine years before the surviving husband assumed to sell and convey the property in controversy, which was not a part of that taken and sold for payment of debts. All the cases cited by appellant recognize this doctrine, and especially that the power of the survivor ceases upon administration. (Tucker v. Brackett, 28 Texas, 340.)

If such a doctrine as that claimed by appellants be law, then the absurd result follows, that where administration is committed to a third person, as executor or administrator of the estate of a deceased husband or wife, yet the survivor may, nevertheless, exercise a power of sale over the community share of property of the decedent. The one may sell the property to pay debts under the will, or by order of the court, while the other may do so without any such power. Such a consequence demonstrates the absurdity of the doctrine. But, on the contrary, the truth is, that if

there were debts unpaid, for which the estate of deceased was liable, they should have been presented and established against the executor, and paid by him in due course.

Moreover, the facts here negative that the children had ever received anything from their father's estate, as his heirs. He was largely in debt to them, and on account of that debt he conveyed a tract of land and some mules to them, but not a cent as heirs; and, upon his decease, his estate proved insolvent—unable to pay even the balance justly due them as creditors, much less having assets to distribute to them as heirs. Appellants say they received the home tract, four hundred and ten acres, as homestead, which is not so; they could not receive more than two hundred acres as homestead; but if true, the homestead is not assets liable for debts on warranty. The law exempted it and vested it in the survivor and children; but they are not chargeable with it as assets received from the estate.

But if the will and administration on the estate of Mrs. Buckley should be held not to vary or affect the power of the husband, then we submit that the true doctrine on the subject of sales of the community by the survivor of a marriage, is asserted in the statute. The common property is liable for debts contracted during marriage; and upon its dissolution by death, if the deceased have children, " the survivor is entitled to one-half of said property, and the other half shall pass to the child or children of the deceased." (Paschal's Digest, article 4642.) The decisions under this statute are in accord with those of Louisiana upon the civil law, whence this community system is derived. (Duncan v. Rawls, 16 Texas, 478; Thompson v. Cragg, 24 Texas, 582; Robinson v. McDonald, 11 Texas, 389; Wilkinson v. Wilkinson, 20 Texas, 242.)

These cases hold that the half interest of the deceased vests immediately in the children, being the heirs; and that the survivor has no power of alienation beyond the liability of the property for

existing debts, or other obligations. We invite the attention of the court particularly to the opinions in Jones v. Jones, 15 Texas, 148, 149, and Primm v. Barton, 18 Texas, 226, 227. The survivor cannot bind the property by new contracts. (Thompson v. Cragg, 24 Texas, 597.) The legal title did not vest in the survivor, as claimed by appellant's brief. In no event, either before or after the act of 1856, did he have more than the power of disposition for the purpose of paying debts and settling the community. The cases of Good v. Coombs and Burleson v. Burleson, 28 Texas, do not conflict with this view, but recognize it.

No case has been found where such sales have been sustained, unless it affirmatively appeared that they were made for payment of just debts. Then equity would rightly uphold them at least, unless the purchase money should be repaid. So it would in other cases than that of a survivor of marriage, as in the case cited already, " where one of two minor brothers died, and the guardian of the survivor, who was heir to the deceased, obtained an order and sold property to pay the debts of the deceased, without administration on his estate. It was held that such administration would only incur useless expense to effect the same end, and therefore the sale was sustained." (Berry v. Young, 15 Texas, 369.)

There are expressions in the Burleson case by Justice Smith not reconcilable with previous cases as to the burden of proof, nor with the statutes. If such absolute title and power vests in the survivor, what becomes of the law which says, " the other half shall pass to the child or children?" What protection have minor children against a spendthrift father? The act of 1856 was intended to limit the power of the survivor and increase protection to the children, not destroy it! But in fact that act has nothing to do with this case. It was five years after the right of the children under the will of the mother had vested. In Sossaman v. Powell, 21 Texas, 667, the court says it applied to cases of community

estates not administered upon before its passage; but they do not apply it to estates where a will was made and administration had been opened. That fact took away the survivor's power of sale, and presents a different question. No title of the children passed by the deed to Holstein, and this we think decisive of the case on this question.

If they took by the will a legal title, then the acceptance of the terms of that will by the surviving husband was a relinquishment by him of all power of a survivor under the law; and no title from him could pass their title any more than he could sell the property of the stranger.

But appellants insist that the act of 1856 restored his power. An act of five years' later date, he says, gave back to him a power which he had surrendered when he accepted the terms of the will, and assumed the character of guardian of his children. How, we ask, can such an effect be given to an act of the Legislature? The reasoning to reach that conclusion is too refined to be understood by us. In order to arrive at it he has to assert that "certainly there was no administration upon Mrs. Buckley's estate when Buckley sold to Holstein," and yet he proceeds to demonstrate by its provisions that it had been administered upon, and that, by article eight of the will, a partition was to be made in the probate court by the executor, which has never been done. The duties of her executor had not ceased, as asserted; and if they had, and administration had been closed, still the title was in the children, and could not be sold by their guardian without order of the court.

The will was probated, and administration was opened by an independent will, it is true, having peculiar provisions; but it was a character of administration provided by law (Paschal's Digest, article 1371), and all creditors had remedy by law to force regular administration, or security for their debts, if they were not paid. (Paschal's Digest, article 1371; note 515 gives the act then in force, of March 20, 1848.) At the same time a partition might be effected at any time. (Article 1363.)

An administration opened under such a will was as valid and complete an administration under the law, as the ordinary modes. If then an ordinary administration would cause the power of a surviving husband to cease, so would this. If administration had been so far completed, by payment of all debts presented within the legal time for their allowance, and only partition remained to be effected, is it not absurd to contend that thereupon the power of the survivor would revive to him?

The case of Sossaman v. Powell is expressly that the act of 1856 "applies to community estates not administered upon at the time of the passage of the act." It is no authority for this case, where there had been (and was still for partition) an administration. The case of Wall v. Clark, 19 Texas, 324, is wide of the mark. It does not touch this case, because there were no children of the marriage!

The law gives the whole of the community to the survivor, where there are no children! The citation of such authority is about on a par, however, with the quiet assumption made in other respects.

There is not an authority cited by appellant which does not make the case of administration on an estate an exception to the power of the survivor over it, where there are children of the deceased.

We insist, therefore, that the surviving husband had no power whatever over the estate, other than that of a guardian under the will. His deed therefore could not pass the title of the minors to Holstein. (See McKey v. Welch, 22 Texas, 390; Dorn v. Dunham, 24 Texas, 376.)

Yet if it be necessary to discuss the right of a survivor to convey the whole community estate, as if there had been no will, no evidence that debts had been provided for and paid, and no limitation run against debts, and as if he had acted in the ordinary case of a surviving husband, without administration, then do the au-

thorities cited by appellant, support his view that the legal title vested in the survivor? The authorities are clearly the other way, that it vests in the heirs. (Duncan v. Rawls, 16 Texas, 478; Thompson v. Cragg, 24 Texas, 598; Robinson v. McDonald, 11 Texas, 389.) And all those cited by appellant recognize that doctrine, or do not deny it.

His only case, which he cites as saying, "The community property belonged to the surviving husband and was not subject to administration," (Wall v. Clark, 19 Texas, 324,) was because there were no children, and therefore the whole community belonged to the husband.

Appellant's cases are all to the same effect, that the survivor has power of disposition, for the purpose of paying debts of the community, where there is no administration. Not one of them asserts that the legal title was in the survivor.

Such being the conclusion, then, the whole question in this case is, did Buckley, the survivor, exercise this power under circumstances which would justify it in equity? Is there good reason why he should have sold his children's property, given to them by their mother? We say there was not; because, first, there had been administration on her estate, which deprived him of the power. The reason why such a power is raised by law, had wholly ceased. The debts had been provided for by his wife, the mother, out of her share of the community.

He had accepted the terms of the will, and property under it ample to pay all debts which he admitted or could make out that he owed in 1851.

If there had been other debts, it was his interest to have reported them, so that his wife's share of the community might be responsible for them. His not doing so evidently is strong reason, if not conclusive, that there were no other debts. Limitation also had run against all debts not sued before 1856.

Nearly nine years had elapsed before he sold, and under the will he was holding the property as guardian of the children.

Under these circumstances we think it clear that he had no power to sell the half belonging to the children. This view is in accord with the cases cited. In Good v. Coombs, 28 Texas, the necessity for payment of debts is made the basis of the power to sell. So in Jones v. Jones, 15 Texas, 149, where there was a valid claim, shown to be still existing against the community.

So in Burleson v. Burleson, 28 Texas, where the decision is put on the ground that " there is no evidence of the community being free from debt, or that there was an administration on the estate."

There are expressions in that opinion relating to other community property being accounted for, which do not touch the question of power of the survivor to sell, but relate to the other question of estoppel, if they had received enough of other property to make up their share of the party claiming as heir. We will comment on that hereafter.

We assume then that as there was evidence here of satisfaction of debts existing at the death of the first Mrs. Buckley in 1851, and of administration on her estate under her will, the husband had no power to sell. If that be true, then, Holstein could not take greater title than Buckley had himself and had power to make. The title remained in the minors absolutely, waiting for partition when they came of age. None of them were of age in 1860 when he sold; and the younger did not become of age until after his death.

During the life of the wife the property was common between her and her husband, he having the legal right to sell at his own discretion. At her death, her half vested in her children, subject only to the power of the husband to sell as trustee or " representative of the community," for the sole purpose of satisfying creditors. When the creditors were satisfied, the power to sell ceased; for the same reason that it did on administration, to-wit: because the administrator would apply the property to pay her

half of debts, and the survivor would have to pay the other half. The title stood, then, unaffected by this power, in the children ; and any deed from the survivor would be without authority and void as to their interest in it. He could not pass a title which he had no power to convey. No vendor can make a title not vested in him, or which he has not power from the owner to make. These minors could give none; the courts gave none, for he was only guardian, and had no order to sell; and having no title to their half in himself, it was clearly impossible for the survivor to pass their title, by his deed, to Holstein.

But in appellant's brief, it is assumed that the apparent legal title was in C. W. Buckley, on record, and that therefore the purchaser from him was a purchaser in good faith without notice.

We think this idea hardly entitled to refutation ; but we answer,

First—That a title by inheritance cannot be recorded; therefore the registry acts of deeds, etc., have nothing to do with this case.

Second—The only registry of deceased persons' estates is to be made in the court of probate, by inventory, of the executor or administrator, which was done here.

Third—If the doctrine be true, then the converse of it would be, also, that if the title had been in the wife's name the husband could not have sold at all, and the legal title to the whole community would vest in the heirs. This is not law. If the purchase was made in the wife's name, still the husband could have sold it during her life, and made good title (see Cook v. Bremond, 27 Texas, 457, and other cases) ; and upon death of the wife one-half would still vest in the husband surviving, though the purchase had been in her name.

Fourth—The title being in the name of a party is not conclusive of ownership in the supposed vendor, because there may be two persons of the same name. The identity of the vendor must be ascertained by a purchaser outside of any record of title. If the argument of appellant be good for any thing, it would prove that

any one named C. W. Buckley could make a title, unless notice should be proved on the purchaser. In this case young C. W. Buckley's deed would have been as good as his father's. This is absurd, and the doctrine is not true.

Fifth—The truth is, that the status of parties selling land in this State must always be inquired of by the purchaser, and the character of his title. The law fixes the rights of married persons and heirs quite as definitely as it does the chain of title by deeds registered. It is just as incumbent on a purchaser to inquire whether the party vendor, if a man, is a married man, as it is whether the vendor, if a woman, be a married woman; and how the title on record was acquired; whether it appear as a purchase or not; and whether the vendor be a widow or widower, and had children. If the title appear to be by purchase, and the wife be living, then the husband may sell whether it appear in his name or hers, without further inquiry. (Cooke v. Bremond, 27 Texas, 457.) But if either be dead, and left children, then the law fixes their rights, and the purchaser is bound to know of them. If he does not, it is his own laches. (See Mitchell v. Marr, 26 Texas, 331.) Certain it is that he could acquire no better title than his vendor possessed, as against minor heirs, at the time of purchase.

And sixth.—The vendee in this case did have notice, because the probate records, the only place where evidences of title of heirs is required to be made, showed the death of Mrs. Buckley, and her will, and the inventory of this very property as part of her community estate. Whether the inventory was formal or not, verified by oath or not, is wholly immaterial. It had been received by the court and recorded in the estate, and was sufficient for all purposes of notice.

Moreover, the property was improved by Buckley, and was occupied by tenants under Buckley from 1850 to 1860, when Holstein bought.

We now come to the question of estoppel. Appellant claims

that appellees are estopped because of alleged, first, advancements by conveyance of land, mules, etc., for which he says no credit was given; and, second, by the inheritance of a tract of "410 acres of the home tract," which he says means homestead tract, and therefore must have been inherited.

Now we think that the doctrine of estoppel cannot be made to apply to a case where it appears clearly that the vendor had not the title vested in him, nor the power to sell at the time.

Can a man sell another's land, and that other be estopped to contradict the sale, because he may have received other property from the vendor? We think not, unless there was some right, or color of right, in him to sell, which here there was not.

But be that as it may, the facts here do not show either advancements by conveyance, or receipt of property by inheritance.

WALKER, J.—The subject matter of suit is the undivided half of fifteen hundred acres of land, situated in Harris county.

On the twenty-eighth of October, 1868, W. H. Howard, Mary L. Howard and Jenny M. Buckley filed their petition against James K. Holland, Annie J. Holland and others. W. B. Walker, as the executor of the will of King Holstein, deceased, was made a defendant by amended petition.

In the progress of suit, the plaintiffs have dismissed as to all defendants except Walker and the Hollands.

It appears that the Hollands were in possession of the land at the commencement of suit, claiming title to thirteen hundred acres of the land in controversy under a purchase from Walker, the executor of Holstein's will. It seems, however, that they never obtained a deed from him.

The action would appear, without close inspection of the pleadings, to be merely the action of trespass to try title, with a claim for damages; but there was, in the original petition, a prayer for partition; and the amended petition, under which Walker was

made a defendant, was a petition for partition as against him, the plaintiffs claiming one half interest in the land, as the devisees of Mrs. L. J. Buckley, mother of the female plaintiffs and first wife of C. W. Buckley, their father.

The plaintiffs recovered in the district court, from which judgment an appeal is brought to this court by Walker, the executor of Holstein's will.

Numerous errors are assigned to the rulings and judgment of the district court.

First—The court erred in permitting plaintiffs to introduce in evidence upon the trial, a copy of the deed from Allen Vince, purporting to act as administrator of Richard Vince, to C. W. Buckley, dated fourth of August, 1846.

It is insisted that it was necessary for the plaintiffs to show that administration had been had upon the estate of Richard Vince, deceased; that there had been an order of the county court to sell the land belonging to his estate; that there had been a sale, which sale was afterwards confirmed by the court.

It is further insisted that the law in force at the time of such sale, if any was made, required that the land belonging to the estates of deceased persons, when sold, should be sold on credit of twelve months; whereas the deed showed a sale for cash.

Had this been merely an action of trespass to try title, wherein the plaintiffs must have deraigned title from the government, and recovered, if at all, upon the validity of that title, then this objection would probably have been fatal to the plaintiffs' claim for the land.

But this must be regarded as something more than the action of trespass to try title; and so far as the defendant Walker is concerned, though he claims title to thirteen hundred acres of the land, it must be regarded as a proceeding in partition.

The deed from Vince to Buckley is dated August 4, 1846, during the lifetime of L. J. Buckley, C. W. Buckley's first wife,

who died on the sixteenth day of September, 1851. The deed from C. W. Buckley to King Holstein is dated March 8, 1860.

The action of trespass to try title may be maintained in the courts of this State upon a merely equitable title. (See Miller v. Alexander, 8 Texas, 36.) And if the form of action in this case was originally mistaken, or wrong parties made, it was competent for the plaintiffs to amend, both as to the form of their action, and by dismissing as to wrong parties and bringing in the real parties in interest. (See Henderson v. Hissam, 8 Texas, 46, and Smith v. McGaughey, 13 Texas, 464.)

"Under our system of procedure a petition may be changed by amendment so as to make the case a perfectly new one, on payment of the costs which would have been adjudged against the plaintiff, had he dismissed his original petition and filed a new one; provided, that in the mean time the statute of limitations had not run, or that some other defense, valid in law, has not accrued to the defendant, and which could have been set up had the original action been discontinued and a new one commenced; and provided, that the defendant has not been improperly brought into court in the first instance, as, for example, when he was sued in a county other than that in which he had his domicile, under color of being joined with a fictitious co-defendant, purporting to reside in such county.

"Although a plaintiff cannot maintain a suit commenced without any cause of action, by introducing a cause of action which has subsequently arisen, without, at least, paying the costs and giving the defendant every defense he could have urged had a distinct suit been instituted upon the new cause of action; yet we see no objection to joining new causes of action, which have accrued since the commencement of the suit, for the purpose of avoiding multiplicity of suits."

We would add to this, that the plaintiff must not be allowed to introduce a new cause of action inconsistent with, or antagonistic to, the cause first counted on. The court should not tolerate re-

pugnance in pleadings. We think that wherever a substantial change is made in the form and nature of the action by the plaintiff, or the defendant introduces entirely new matter of defense, having once pleaded to the merits, so as to delay the cause, the district court should insist on the payment of all costs made in the case up to the time of filing the amended pleading. The rule which puts a party thus pleading upon "*terms*" is too familar to the courts of the country, though not heretofore rigidly insisted on in this State, to require argument or authority to establish its soundness in law and reason.

But this by no means disposes of the very complicated case before us. It is shown by the record that Mrs. L. J. Buckley died testate, having appointed an executor by her will, and devising a large amount of community property to her children, then minors, for whom it appears the father, C. W. Buckley, acted as guardian. It was undoubtedly his duty to protect the interests of his children and wards. It was also the duty of the executor of Mrs. Buckley's will to settle her estate and execute the trusts created under the will in good faith, and within a reasonable time, so far as the trusts were limited in their duration.

We come now to regard the parties as claiming under a common title, each presenting their rights at law and in equity.

Eight or nine years had elapsed between the death of Mrs. Buckley and the date of the deed from C. W. Buckley to King Holstein. Whether C. W. Buckley acted in good faith, in selling the land to Holstein, or not, the exhibits and evidence in the case all show that Holstein was a *bona fide* purchaser for a valuable consideration; all of which has been paid, a portion of it even since the death of C. W. Buckley.

It is claimed that C. W. Buckley had a right to sell the land in controversy, for the payment of community debts, and that there were such debts existing at the time of the sale, and that at least one large debt still exists; and it is insisted as error that the dis-

trict court refused to admit evidence to the jury, showing the existence of this debt. We think the evidence would have been proper, had it been shown that Buckley sold the property to pay debts, and that the money was actually applied in that way. It is difficult for us to determine, from the existing law, what were the relative rights of the executor of Mrs. Buckley's will, and the surviving connubial partner. It is urged by the appellee that the will of Mrs. Buckley took away from her surviving husband the right to control and sell the connubial property.

We cannot concur in this opinion. Mrs. Buckley, by her testament, could not set aside the legal rights of her surviving husband, and, in respect to her memory, we declare that we have found nothing in this case which compels the conclusion that she ever intended so to do.

While it is the policy of the law to guard with jealous watchfulness the interest of minor children, it is, nevertheless, held to be good in morals and good in law, as a rule, that such children should not be allowed to impugn the motives or degrade the memories of their deceased parents, by charging them, in the courts of the country, with fraud and corruption, unless such charges are clearly made out by evidence.

It is easy to gather from the record that these appellees have received a very considerable amount of property from both father and mother.

We have said that it was our intention to regard this as a proceeding in equity for partition; the appellees have strongly insisted on this theory of the case. We have also intimated that it was not incumbent on the plaintiffs to go beyond the common source in their deraignment of title. (See Paschal v. Acklin, 27 Texas, 192; also Burleson v. Burleson, 28 Texas, 383.) The appellants were estopped *in pais* from denying the title under which they themselves claim. They might have set up an outstanding title, and shown that they were claiming under it; but

in a proceeding like this we must look more to the equities of the parties.

In Good v. Coombs, 28 Texas, 385, it is held that " There is no rule of law known to this court, by which the survivor of the conjugal partnership is prohibited from alienating his or her portion of the community estate, provided the alienation is in good faith, and not with intent to defraud creditors or the heirs of the the deceased partner.

" The right of the survivor of the conjugal partnership, to make sales of community property, would seem to be a necessary consequence of the obligation of such survivor to discharge the debts against the partnership, because it is usually by such means only that those debts can be paid."

But we think the authorities cited by the appellant are not satisfactory of the conclusion that in cases of administration on an estate of a deceased connubial partner, the power of the survivor over that portion of the estate which descends to the children of the deceased does not cease.

The case of Wall v. Clark, 19 Texas, 324, is a case where there were no children born of the marriage. We think the case of Sossaman v. Powell, 21 Texas, 666 and 667, draws a clear distinction between cases where there has been and where there has not been administration.

Chief Justice Hemphill says: " We are of opinion that the suit was properly brought by the wife and minor children, to remove the cloud from their title. But if this were doubtful under the law as it formerly existed, that doubt has been removed by the act of twenty-sixth of August, 1856, supplementary to the act of March 13, 1848, 'defining the marital rights of parties.' The act declares in effect that it shall not be necessary for the surviving husband or wife to administer upon the community property, but he or she shall have the exclusive management, control and disposition of the same, after the death of the other

XXXIV—32

partner in matrimony, etc.; and that he or she may sue or be sued with respect to the same.

"The husband departed this life nearly two months before the passage of this law, but there is not much probability of administration having been taken out, prior to the passage of the act, and if so, there would have been no necessity for administration; for by fair construction the act applies to community estates not administered upon at the time of the passage of the act, as well as those arising afterwards by the death of the husband or wife, subsequent to its passage."

Now, there is some question as to whether the community estate of Buckley and wife had been administered at the passage of this act, and how far the act affected the right of Buckley to sell and dispose of any community property which remained after administration had been completed.

The third section of said act requires the husband, in the event his wife had a surviving child or children, to file an inventory of the community property. The fifth section empowers the county court to require a bond from the husband, or to "appoint administration over the estate, as in other cases," upon the heirs of the wife showing that the "husband is wasting or mismanaging, or is about to waste or mismanage such community property, or is about to remove it out of the State, or otherwise dispose of it, in such manner as to injure or defraud the right of such heirs."

In Burleson v. Burleson the court say, in speaking of the rights of heirs to recover community property: "If they desire to enforce them at this late day, they must be prepared to show and do equity themselves.

"Their rights of inheritance in the community property of their father and deceased mother were not unqualified and absolute, but only attached upon the residue that might be left in the hands of their father after the extinguishment of the community debts, if there were any."

It is not made clear to the mind of the court that there were not community debts unpaid, even at the date of the sale from Buckley to Holstein; but about nine years had elapsed between the death of Mrs. Buckley and the date of the deed to Holstein, and it is fair to presume, there having been administration on the estate of Mrs. Buckley, that the debts had been paid, or were at least barred by the statute of limitations.

But the surviving husband had a right to sell the community property to reimburse himself for community debts paid by him out of his own funds. Such, however, would have been a debt against the ganancial estate, and should, perhaps, have been presented to the executor of Mrs. Buckley's will for payment.

We do not feel bound to presume anything in favor of the claim of the appellees, but rather hold with the court in Burleson v. Burleson, that they must account for what they have received of the community property; they must show clearly that out of the large amount of the community property owned by their father and mother at the decease of the latter, they have not received their full share, after deducting the amount of the debts against the property outstanding at the time of their mother's death; and if it shall appear that they have received such an amount, then they will not be allowed to disturb the title of a *bona fide* purchaser, from their father, of any portion of the community estate which might have remained in his hands after the payment of debts, and the satisfaction of their own rights. We are not sure that the act of August 26, 1856, could have affected the parties in this case; but if administration were not complete upon the estate of Mrs. Buckley, at the date of its passage, then it did affect the community estate, and gave Buckley an almost unqualified power to control, to sell and dispose of the estate.

Article fifteen of the will of Mrs. L. J. Buckley reads as follows: "Upon the return of the partition by my said executor, he shall be considered as discharged from further duties and all liability, without the formal discharge by the court."

This act then terminated the administration upon Mrs. Buckley's estate. By the provisions of that will the management of the property was taken away from the county court. The eighth article of the will reads as follows: " It is my will and desire, that when my children, respectively, shall arrive to the age of maturity, or shall marry, the county court may appoint a commissioner to divide said property into so many parts, equal in value, as there shall be of my said children living, which said parts may be designated by numerals written upon ballots, and said child so arriving at age, or marriage, shall draw out one of said ballots, and the part so designated by said ballot shall pass to and vest in said child, to his or her own proper use forever; the remainder of said property to be kept together and managed by my said husband as aforesaid. A second division may be had in like manner; upon the happening of a second contingency as aforesaid, and the return of the commissioner into the county court shall be admitted of record, and shall be a complete release to my said husband of all responsibility on account of said property so distributed; and when the last of my said children shall arrive to the age of majority, or shall marry, then my said husband shall deliver to said child the remainder of said property, and the same shall vest in said child in like manner as above set forth; and the receipt of said child to my said husband shall be a complete exoneration of him from all liabilities on account of all said property, which receipt may be filed and admitted of record in said court, and shall have the like force and effect as the record of said return of said commissioner."

Under this clause of the will, the legal title to the land in controversy could not have vested in the children of Mrs. Buckley before the happening of the events therein contemplated. If, then, the legal title was conveyed by Vince's administrator to C. W. Buckley, it must have remained in him, subject only to an equitable estate in the appellees to the one half of the land in right

of their mother, or under the devises of her will. For the purposes of this case we must hold that the legal title to the land was in C. W. Buckley on the eighth of March, 1860. The deed from Vince must have conveyed this idea, and now it but remains to determine how far a *bona fide* purchaser, not chargeable with notice of the equity in the children of Mrs. Buckley, could be affected by this outstanding equity.

The heirs of Mrs. Buckley could have prevented the sale, or they could have required a bond of indemnity. (See articles 4648, 4649 and 4650, Paschal's Digest.) This they had totally neglected.

But whilst we must regard the law and the facts in the light in which we have stated them, it is our most earnest wish to arrive at such a disposition of this case as shall stand upon the fairest grounds of equity. We cannot ignore the conviction that, notwithstanding their want of diligence in protecting themselves against the acts of their father, by the remedies which the statute placed in their hands, they certainly had an equitable interest in the land, in right of their deceased mother. Some of them were infants and females, and it was only natural that they should confide, in the fullest sense, in the justice and integrity of their father; and we cannot, under all the circumstances, declare that these children shall be deprived of their entire interest in this land. Yet they must regard the equitable rights of those who are interested in the estate of King Holstein, deceased; and we hold it to be equity that before the appellees shall have partition of the lands in controversy, they shall repay to the executor of Holstein's will the equal one-half of the purchase money paid by Holstein to C. W. Buckley, together with interest at the rate of eight per cent. per annum; or, in case the appellees prefer it, they may have partition of the land on payment to the executor of Holstein's will of an amount equal to the fair valuation of all the improvements made upon the land since the sale by Buckley to Hol-

stein, and the estate of Holstein must be charged with the sum of sixteen hundred dollars, money received from Holland and wife.

It is due to counsel, who represent both the appellant and appellees, that we should say it is rarely our good fortune to meet with a case so thoroughly argued and briefed, but the argument is eminently controversial—the one side is very good until the other is told. The judgment of the district court is reversed and the cause remanded, to be proceeded in in accordance with this opinion.

Reversed and remanded.