| 48 | 257 |
|----|-----|
| 82 | 593 |
| 83 | 686 |

## J. B. JOHNSON ET AL. *V.* THOMAS HARRISON ET AL.

1. SUIT BY HEIR OF DECEASED WIFE FOR COMMUNITY PROPERTY.—In a suit for land by the heirs of a deceased wife against vendees of the husband, subsequent to the wife's death : *Held,* That the fact of heirship and that the land was community property at the death of the parent being established, the children of the deceased are entitled to recover, unless some equitable defense be made.

2. CASES DISCUSSED AND APPROVED.—Robinson *v.* McDonald, 11 Tex., 385; Duncan *v.* Rawls, 16 Tex., 478; Thompson *v.* Cragg, 24 Tex., 582; Mitchell *v.* Marr, 26 Tex., 329; Jones *v.* Jones, 15 Tex., 143; Stramler *v.* Coe, 15 Tex., 211; Primm *v.* Barton, 18 Tex., 227; Walker *v.* Howard, 34 Tex., 478; Magee *v.* Rice, 37 Tex., 500.

3. CASE DISCUSSED AND LIMITED.—Burleson *v.* Burleson, 28 Tex., 418.

4. COMMUNITY PROPERTY LIABLE TO DEBTS OF COMMUNITY.—On the death of either husband or wife, the debts and obligations of the community are a charge on the common property, which must be satisfied, and it is only the remainder to which the survivor and children of the deceased are entitled. But, subject to this charge, the remainder vests in the survivor and the children of the deceased.

5. SAME.—The interest of the survivor and that of the children is the same, each one-half of the remainder. The legal title is in the survivor and in the children.

6. COMMUNITY DEBTS, HOW PAID.—If there be community debts, the survivor of the community may appropriate community property to their payment, and his power to wind up the community affairs is so far recognized, that sales made by him for that purpose will not be set aside.

7. SALE OF COMMUNITY PROPERTY BY SURVIVOR.—The power to sell is dependent upon the existence of some claim against the com-

**17**

munity, and whoever purchases must see to it that the facts exist which authorize the sale.

8. SUITS BY HEIRS AGAINST THE VENDEE OF SURVIVOR.—Children of the deceased member of the community, suing the vendee of the survivor, occupy the same position as in other cases of heirship. They show a legal title, and are therefore entitled to recover, unless a valid sale be shown.

APPEAL from McLennan. Tried below before the Hon. J. W. Oliver.

A sufficient statement of the case is given in the opinion.

The case was taken for decision to Tyler, and there decided December 7, 1877.

*Norris & Sleeper* and *J. L. L. McCall,* for appellants.

*Thomas Harrison,* for appellee.—It is contended that the decisions of the District Court, sustaining the demurrer of the defendants to the amended petition of the plaintiffs, should be affirmed—

1. Because it is nowhere stated in the pleadings that the land sued for was not sold to pay community debts.

2. It is nowhere stated that the plaintiffs have not received from their father, or from the estate, assets equal to their mother's interest in said land.

3. It is nowhere stated that it was necessary to resort to this land to satisfy them for their interest in their mother's estate.

4. They have not pretended to show what amount of common property was left at the death of their mother, or to account for the same in any manner.

All these averments are necessary. (Burleson *v.* Burleson, 28 Tex., 418, 419.) In opposition to that case, is Magee *v.* Rice, 37 Tex., 483, and the court will determine which of the cases it will follow.

It seems to me, that, where parties set up secret equities against the legal title in the hands of an innocent purchaser for value, without notice, they ought to be required to neg-

ative every fact and presumption upon which the legal title could be maintained.

5. The rights of the parties, plaintiffs and defendants, accrued after the passage of the law of 1856, regulating marital rights; and it is respectfully submitted, that the decision of the court ought to be sustained, upon a proper construction of that statute.

That act does not prescribe a mode of administration, but gives to the survivor of the marital partnership the right of disposition over the community property, without administration. (Paschal's Dig., 4647.)

The direction to file an inventory and appraisement could not have been meant by the law-makers to be a condition precedent to the right of disposition. Section 4 provides: "That should the surviving husband neglect, or fail, or refuse to file an inventory within sixty days after the death of the deceased wife, the County Court, upon the complaint of any one interested, or upon its own motion, or on the motion of any other party interested, may require him to do so, or otherwise grant administration as provided by law."

The object of this section, plainly, is to have provided permanent evidence of the amount and value of the estate, for the information of the heirs, and to enable them to hold the survivor responsible, with his own goods, for such portions of the estate as he may have disposed of. It seems to concede the right of disposition, and contents itself by providing amply against waste and maladministration.

If he cannot sell, why should evidence be provided which is only needed after sale? Why should he be compelled to file an inventory, if he could not without it affect, by any conveyance made by him, the inheritance of the heirs of the mother? Surely there is no use for an inventory, if the property is to remain in his hands intact. If the object of the law was to preserve the estates of minors, certainly that object would have been better accomplished if the survivor should

not be required, by the unimportant act of filing an inventory, to qualify himself to waste them.

The filing of an inventory must be a directory requirement, (not mandatory,) unimportant in any view of the subject, and entirely useless if the conveyance of the survivor would be invalid without it. The truth is, the law goes upon the just presumption, that a man is as well qualified after the death of his wife as he was before to manage the community estate. He could sell against her wishes, despite of her, while living;—why may he not sell it after her death without the consent of her children? Are their rights more sacred or important than hers?

Walker v. Howard, 34 Tex., 478, manifestly favors this construction. The court says: "But if the administration was not complete upon the estate of Mrs. Buckley at the date of its passage, [the law of 1856,] then it did affect the community estate, and gave Buckley an almost unqualified control to sell and to dispose of the estate." In the case of Magee v. Rice, 37 Tex., 483, it is decided, that where the right accrued before the passage of the law of 1856, the filing of an inventory after its passage would not authorize the survivor to dispose of the community property.

In the case of Hartman v. Thomas, 37 Tex., 90, where the mother died after the passage of the law of 1856, no question was made upon the right of the father to alienate the interest of her children in the community estate. The plaintiff only claimed the interest of the father, and prayed for partition.

I am not aware of any case in which this law of 1856 has come directly before this court for construction. Vast interests have vested under it upon the construction now contended for, and it would seem that these interests ought not to be disturbed, unless some positive, unbending rule of law requires it. This law, in its terms, affords ample protection to all parties interested. (Paschal's Dig., 4649, 4650.) If they have failed to use the means provided, no one is to blame but themselves; and, in fact, it is generally true, and it is conspic-

uously so in this case, that those who are seeking recoveries in cases like this have received the full benefit of sales necessary for their support and education.

On the construction of statutes, the court is referred to Potter's Dwarris on Statutes and Constitutions, 222, and note; Sedgwick on Statutory and Constitutional Law, 368–378.

GOULD, ASSOCIATE JUSTICE.—The children of James C. and Melitea Johnson brought this suit of trespass to try title, claiming, as heirs of their mother, the undivided half of a tract of land of forty acres, alleged to have been community property and the homestead of their parents up to the death of their mother, in 1856. In an amended petition, they show that most of the defendants claimed under conveyances made by their father after the death of his wife, the father himself having died in ——.

The court sustained a general exception to this petition as amended, and the plaintiffs not asking further leave to amend, their petition was dismissed. The judgment is supported in this court, on the ground that where children sue to recover the community interest of their deceased parent from one who holds under a conveyance from the surviving parent, they must allege and prove that such conveyance was not made in satisfaction of community debts, and must, in fact, negative the existence of any equities against their claim.

In the recent case of Yancy *v.* Batte, *supra*, p. 46, decided at the present Tyler Term, the majority of the court held, that the fact of heirship and that the land was community property at the death of the parent being established, the children of the deceased were entitled to recover, unless some equitable defense was made out. It was said, "that such is believed to have been the doctrine recognized in this court from so early a period, and in so many cases, that we do not regard it as open to controversy."

That opinion was supported only by a bare citation of cases, and it is proposed now to take a view of those cases, for the

purpose of seeing how far they justify the position that the question should be treated as settled.

One of the earliest cases in which the subject was considered is Robinson *v.* McDonald, 11 Tex., 385. That was a suit on a title bond to community lands, made by the surviving husband after his wife's death. Hemphill, C. J., says that the holder of the title bond had all the interest in the land that his vendor had or could have legally or equitably claimed. "For aught that appears, this would be one-half, inasmuch as he is entitled to one-half of the community generally, the children of the wife being entitled to the other half. No inquiry was made as to the existence of debts at the dissolution of the community by the death of the wife, or whether any of these were paid by the surviving husband; and what credits, if any, he was entitled to for such payment; and how much, on equitable principles, his share of the community might be increased to reimburse him for such expenditures. These equities were not the subject of examination, and there were probably no facts to raise such claims on the part of the surviving husband or his vendee. The record there shows a case in which the surviving husband, and through him his vendee, is entitled to one-half of the tract of land in controversy." Here we have it asserted, that as the record showed nothing more than a sale by the surviving husband, the vendee was entitled to one-half, recognizing the right of the wife's heirs to the other half.

Duncan *v.* Rawls, 16 Tex., 478, is a case originating, it is true, before the present statute, but in which the same question was directly made and decided. A. B. Rawls was the son of Daniel and Milly Rawls, and brought suit to recover, as heir of his deceased mother, one-half of a tract of community land, sold by the surviving father to the defendant Duncan. Hemphill, C. J., says: "The important question in this case may be resolved into two points, viz.: 1st. Can the plaintiff maintain this action without first showing that the community of gains, existing between his father and mother, was

settled in a regular course of administration, and that this land remained to the community after the payment of debts? 2d. Was the plaintiff barred of his action by prescription or limitation?

"The community was primarily liable for its debts and charges, but it does not follow that the fact as to indebtedness could be ascertained only by administration. This may furnish more conclusive proof; but, without administration, there may be satisfactory evidence that no debts ever existed, or, if so, that they have been discharged. And when, as in this case, there has been a lapse of thirteen or fourteen years, there is a presumption that the debts have been paid off; and there being no evidence that any ever existed, the presumption is that none ever did exist. Had any been owing at the death of plaintiff's mother, or had the land been sold to satisfy debts, there would, doubtless, have been some evidence of these facts. When an heir, especially after so great lapse of time, sues for the share of a deceased partner in the community, the fact of indebtedness, if relied upon, must be established by the defense. Nothing of the kind was attempted in this case. There was no evidence about indebtedness, one way or the other. We are of opinion that the action cannot be defeated on the supposed bare possibility that there might be debts against the community. It does not appear that any have been discovered, and it is not to be presumed that any would be developed by administration.

"It is not necessary to consider what equities might be set up by a surviving husband, or his vendees, against the claims by the heirs of the deceased wife, for her share in the community; as, for instance, that the property is subject to or has been disposed of in payment of debts; or that there is other property of the community sufficient to satisfy the claim. No such points are raised in this case. Believing that the first ground is insufficient, and that the action will lie, notwithstanding there has been no administration on the estate of the mother, which, in this instance, would be but a useless

form, we will proceed to consider whether the plaintiff is barred by the laws of prescription."

The opinion in this case holds, that any equity of the surviving husband, or his vendee, such as the indebtedness of the community, was a matter of defense. It is true, that this conclusion is, in the opinion, strengthened by the presumption, arising from the lapse of time, that all community debts have been paid. But the controlling point was evidently the other.

Wilkinson *v.* Wilkinson, 20 Tex., 238, was a similar case, and the question, although it is presented in the briefs on both sides, is apparently regarded by the court as settled; for the right of the heirs to recover is allowed, without discussing or noticing the question. In this case, and in Duncan *v.* Rawls, the heirs were allowed to recover, without alleging or proving more than the fact of heirship and the community character of the land, although in each case the question was made.

Thompson *v.* Cragg, 24 Tex., 582, is another case, in which the heirs, in their amended petition, set forth the fact that the surviving member of the community, their father, had, after their mother's death, made a title bond to convey community land. That bond, after his death, had been enforced in a suit against his administrator and heirs. The title thus obtained was held not to affect the rights of the same persons as heirs of their mother, and not to be color of title, under the three years' statute, to the mother's portion. The opinion and the decision repudiate the doctrine that one-half of the community does not vest in the children of the marriage upon the death of one member of the community.

Mitchell *v.* Marr, 26 Tex., 329, was a suit by the vendee of the heirs of the deceased husband against the vendee of the surviving wife. The report of the case indicates that it was tried below, without any question being made that if the land was community property, and the heirship was established, the right of plaintiffs was established, without further allegation or proof.

It would seem that this succession of cases was regarded as having settled the question.

But those cases did not stand alone. There were others, in which the nature and extent of the rights of the survivor of the community and the heirs of the deceased were discussed.

Jones *v.* Jones, 15 Tex., 143, was a suit in which, says Hemphill, C. J., "the contest is virtually between a creditor of the community and the heirs of such portion of the community as they may be entitled to in right of the mother;" and the question was, whether a community debt did not constitute a claim superior to that of the heirs. Hemphill, C. J., says: "On the death of the wife, her estate became entitled to one-half of the community property, but her heirs, the appellees, can claim and finally hold only such portion as may remain after payment of all just demands against this community." The opinion asserts the right of the surviving husband to discharge the debts of the community, and that sales of community property made by him for that purpose could not be disturbed. There is nothing in the opinion inconsistent with the position that, *prima facie,* the heir is entitled to half of the community, and that the burden of proving the existence of the community debts devolves on him who disputes the right of the heir. (See, also, Stramler *v.* Coe, 15 Tex., 211.) In Primm *v.* Barton, 18 Tex., 227, the case of Jones *v.* Jones was commented on and explained. The acts of the surviving husband, in discharge of prior obligations, and in virtually, if not formally, winding up and settling the affairs of the community, must, it is said, be legitimate, and not subject to impeachment for want of authority; and it is further said, "that the voluntary deed of the father, conveying land, which he, during the existence of the community, had agreed to sell, vests such title as cannot be gainsaid by the heirs of the wife, unless it be shown by clear proof that the sale was made and perfected to defraud the wife of her land."

The existence of a community obligation being shown, the

burden of proof, in impeaching the conveyance made in discharge of that obligation, is properly placed on the heir. But the implied conclusion is, that until such community obligation or some other equity is established, the right of the heir prevails.

In this state were the decisions of this court when the case of Burleson v. Burleson, 28 Tex., 418, was decided. It is not to be denied, that the opinion in that case is at variance with the rule believed to have previously prevailed; but, on examination, it will be found, it is only an opinion expressed, and not an authoritative decision of the question. The heirs of John Burleson were claiming their mother's community interest in land patented to the assignee of their father's conditional certificate, the assignment having been made in the lifetime of their mother, and the unconditional certificate having been issued in the name of the assignee. The rights of the heirs were purely equitable, as Judge Smith says. The rights of their mother, if living, would have been only equitable, because the legal title was in the defendants. As the heirs were claiming equity, they might properly be required " to be prepared to show and do equity themselves." If the opinion undertakes to decide anything in regard to this question, it may be justified by this familiar principle. Very evidently, however, the learned judge who wrote that opinion, and probably the entire and able court, as then constituted, held views which would have led them to overrule the older decisions on that subject. Very naturally, the effect of that opinion was to cause the question to be again presented to this court. Accordingly, in Walker v. Howard, 34 Tex., 478, we find it once more the subject of discussion by counsel; but in Magee v. Rice, 37 Tex., 500, the question was directly involved, and was again decided in accordance with the earlier decisions.

"Upon a very full and careful examination of the law," says Justice Walker, "we are then of opinion, that upon the death of the mother, Mrs. Richey, her interest in the ganan-

cial property descended to her children, subject only to the community debts and the rights of the surviving partner for reimbursements.

"But it is insisted that other community property has descended to the plaintiffs, fully equal to their mother's interest in the entire community property. If this be shown, equity will protect the rights of *bona-fide* purchasers, for a valuable consideration, from the father. But in this action, we do not think it incumbent on appellants to prove that they have not received their full share of the community property. This is a matter of defense, and the *onus probandi* is upon the appellees; and we will here remark, that if the case of Walker *v.* Howard is in conflict with this doctrine, it must stand corrected, although we think it is not."

After thus being again deliberately decided in accordance with the original decisions, do not the rules of law require that the question be regarded as settled? There is no rule more vital, more fundamental, than that which requires an adherence to decisions. The disregard of that rule, especially in matters affecting titles to land, leads to most injurious results, and can only be justified by "reasons most urgent, and upon a clear manifestation of error." (1 Kent's Comm., 475.)

Looking at the question in connection with the statute regulating marital rights, we not only fail to find any urgent and convincing reasons for changing the rule recognized by the decision, but we find it difficult to deduce from the statute any different rule.

The statute makes property acquired during marriage the common property of husband and wife, subject, indeed, to the control and disposal of the husband during coverture; but still it is the joint property of the two. "Upon the dissolution of the marriage by death, the remainder of such common property shall go to the survivor, if the deceased have no child or children; but if the deceased have a child or children, the survivor shall be entitled to one-half of said property, and the

other half shall pass to the child or children of the deceased."
On the death of either, the debts and obligations of the com-
munity are a charge on the common property, which must
be satisfied, and it is only the remainder to which the sur-
vivor and the children are entitled. But subject to this
charge, the property—the remainder—vests by the statute in
the survivor and the children of the deceased. The interest
of the survivor and that of the children is the same—each
one-half of the remainder. The legal title is in the survivor
and the children. The child who sues for his share, is not
asserting an equity but a legal right, under the statute. If
there be community debts, the survivor of the community
may appropriate community property to their payment; and
his power to wind up the community affairs is so far recog-
nized, that sales fairly made by him for that purpose will not
be set aside. His power to sell is dependent on the existence
of some claim against the community, and whoever purchases
from him must see to it that the facts exist which authorize
the sale. The children of the deceased member of the com-
munity who sue the vendee of the survivor, occupy just the
same position as in other cases of heirship: they show a legal
title, and therefore are entitled to recover, unless a valid sale
is shown.

Those who assail this rule, doubtless find an urgent reason
for doing so in the conviction that the law on the subject of
the rights of the surviving husband in the community prop-
erty is at variance with the habits and modes of thought of
the large body of the people of the State; that it is the source
of much litigation, and that it is desirable to place a check
on such litigation, by requiring children who assail the con-
veyance of a parent to assume the burden of proving that the
conveyance was wrongful.

But if the evil be in the law, is not the proper remedy to
be sought in legislative action?

In regard to other questions discussed, they are either set-
tled by the decisions of this court since this case has been

pending, or are not so presented in the record as to require their decision.

The court erred in sustaining the demurrer to the amended petition, and for this error, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

(Associate Justice MOORE did not sit in this case.)