## Davis Wenar v. Herman Stenzel et al.

1. MARITAL RIGHTS.—The power of the surviving husband to sell community property, for the purpose of paying community debts, has been recognized by repeated decisions, and it was not affected by the act of 1856, (Paschal's Dig., art. 4636,) amendatory of the marital-rights act, which enabled the survivor of the community to control and dispose of the community estate by filing an inventory and appraisement thereof.

2. MARITAL RIGHTS.—There is no rule of law which requires the surviving husband to exhaust the personalty before selling land belonging to the community estate, for the purpose of discharging community debts.

APPEAL from Galveston. Tried below before the Hon. A. P. McCormick.

This suit was brought by the appellees, as heirs of their mother, against the appellant, the purchaser, holding under warrantee deed made by their father, after her death, for their share of the community interest of the mother in lot number 3, in block number 384, in the city of Galveston, alleged to be one-half thereof.

The appellant, in defense, pleaded a general denial; and, specially, set up the warranty of the father, and assets descended to the appellee of equal value, by way of estoppel; and alleged the existence of community debts against the community estate, and the discharge thereof by the father from the proceeds of the property sued for and sold by him; and further, that the proceeds of the purchase-money derived from the sale were employed for the support and maintenance of the appellants, and in the acquisition and purchase of the property of which he died seized and possessed, to wit, of fourteen lots, in block number 157, in the city of Galveston, and improvements, and mill and machinery thereon, and other real and personal property enumerated, of the aggregate value of $25,000, which descended to and vested in the appellants, as heirs of their deceased father, all of which was pleaded in bar and preclusion of the appellees' right to recover. The appellant further pleaded, that he was a purchaser in good faith, for full value paid, without notice of any adverse title; that he had made permanent and valuable improvements on the lot sued for, and reconvened for the value thereof, &c.

On the 3d of July, 1874, the cause was submitted to a jury, and verdict and judgment for the appellees for one-half of

the lot number 3, in block number 384, &c. Appellant moved for a new trial, which was refused, and Wenar appealed.

The statement of facts contains at length the several deeds, with full covenants of warranty from Carl Stenzel, the vendor, father of appellees, down to Davis Wenar, the purchaser, for the price of $6,250.

It appears, from the evidence, that J. C. Stenzel, the father of Herman Stenzel and his sister, Emma Souchard, the appellees, died in October, 1871. He lived with, and recognized as his wife, from 1850 until her death, in 1860, Caroline E. Stenzel, the mother of appellees. While thus living with her as his wife, he bought, in 1851, the lot of ground in controversy. The family did not live on the lot, but resided on leased property, which he had improved. After the death of Caroline E. Stenzel, her surviving husband married a second wife, who survived him. Of the last marriage, there appears to have been a child born, which since died. The block of ground in controversy was purchased and owned by J. C. Stenzel before the death of his first wife, the mother of appellees, and sold before his last marriage, and was estimated as being worth $14,000, without regard to machinery upon it, which was variously estimated as worth from $7,000 to $10,000. Administration was taken out on the estate of J. C. Stenzel in 1871, and, except an inventory filed in 1872, nothing appears to have been done under the administration. J. C. Stenzel did not qualify as survivor in community of the estate of Caroline E. Stenzel, nor was any administration opened on her estate.

Wenar, the appellant, testified that he purchased the property in 1868, after procuring legal advice as to the title, and that he had no knowledge of an adverse claim until this suit was brought; that he paid the purchase-money, and placed on it improvements, of value over nineteen hundred dollars.

One witness testified that he loaned to J. C. Stenzel, during the lifetime of his first wife, between seven and eight hundred dollars, and to secure the loan, he gave a trust deed

on the lot in controversy, and thinks he was paid from the proceeds of the sale. He stated that Stenzel had a planing and sash factory on leased ground, worth ten thousand dollars. It was burned down in 1869, but most of the machinery being saved, it was put up on the block of ground in controversy. The action of the court in charging the jury is shown in the opinion.

The assignments of error relate to alleged error of the court in giving and refusing charges.

*Willie & Cleveland,* for appellant, contended—

I. That the act of August, 1856, (Paschal's Dig., art. 4636,) is not a restraining statute, and that it took away no powers recognized in the husband by former law; that by complying with that statute, he had the right to manage and dispose of the community property in such manner as he thought best for the estate.

II. That the conveyance made by the husband was, *prima facie,* good; citing Parker *v.* Parker, 10 Tex., 96; Duncan *v.* Rawls, 16 Tex., 479; Walker *r.* Howard, 34 Tex., 513; Magee *v.* Rice, 37 Tex., 495; Wright *v.* McGuinty, 37 Tex., 734; Thompson *v.* Cragg, 24 Tex., 604.

III. That the title of appellant was good, extrinsic of the deed; citing Jones *v.* Jones, 15 Tex., 143; Berry *v.* Young, Id., 369; Walker *v.* Howard, 34 Tex., 513; Burleson *v.* Burleson, 28 Tex., 410.

*M. C. McLemore,* for appellees.—Our case was and is a simple one. We claim the one-half of lot 3, in block 384, in the city of Galveston, upon the ground that it was the community property of Carl and Elizabeth Stenzel, and that being such at the death of said Elizabeth, and said Carl not having qualified under the marital-rights law, he could not sell it after her death, except it had been necessary to pay debts, and hence, as the heirs of the said Elizabeth, the claim is made for the property; and it not being true that the

said Carl Stenzel has ever paid to said heirs any sum of money whatever, nor his estate, nor did he sell said property to pay debts of the community, the heirs therefore insist that the verdict as given was proper, and that the judgment on it was and is a righteous one.

That the proposition of prospective estoppel, relied upon by the defendant, might have enabled the defendant to restrain the progress of the suit of the heirs of Carl Stenzel to recover the mother's interest in the particular property, upon the ground that, after full administration of Carl Stenzel's estate, there would be received by said heirs of the mother from the said estate of the father, by them, as his heirs, more than or enough to indemnify them for the loss of their mother's interest in the particular property, is barely possible.

For to that suit it might well be replied: "Look to the estate of Carl Stenzel whilst in administration, or your warranty, that has failed." This course would have given the vendee of Stenzel the indemnification for a broken warranty, and would have allowed the heirs of the mother to claim their inheritance from their mother.

But the proceeding indicated was not resorted to by the defendant, and he relied, and now relies, upon his right to force the heirs of the mother to await the result of an administration that may leave them nothing; and in the meantime, the statutes of repose may quiet the title of defendant against an action which, although good, would be contrary to the policy of the law to be entertained.

He relied, in argument, on Robinson *v.* McDonald, 11 Tex., 390; Jones *v.* Jones, 15 Tex., 143; Berry *v.* Young, 15 Tex., 369; Wilkinson *v.* Wilkinson, 20 Tex., 244; Maxwell *v.* Morgan, 20 Tex., 202, 204.

GOULD, ASSOCIATE JUSTICE.—That sales of community property, fairly made by the surviving husband, for the purpose of discharging community obligations, cannot be disturbed by the heirs of the deceased wife, is not an open question in this

court. (Jones *v.* Jones, 15 Tex., 143; Primm *v.* Barton, 18 Tex., 222; Good *v.* Coombs, 28 Tex., 51; Walker *v.* Howard, 34 Tex., 513; Dawson *v.* Holt, 44 Tex., 174.)

This power in the surviving husband has been recognized in recent decisions, and the opinion expressed that it was not affected by the act of 1856, amendatory of the marital-rights act, enabling the survivor of the community to control and dispose of the community estate by filing an inventory and appraisement thereof. Says Justice Ireland: "It must be borne in mind, that the surviving husband had the right to sell community property to pay debts against the community after the death of the wife, without the aid of this statute. It was clearly not the intention of the Legislature to throw restrictions around the survivors in such cases, but to enlarge their powers." (Dawson *v.* Holt, *supra.* See, also, Lumpkin *v.* Murrell, 46 Tex., 51, and Johnson *v.* Harrison, Supra, 257.)

The answers of defendant set up, amongst other things, the existence of community debts to a large amount, and that these debts were discharged from the proceeds of the sale of the lot sued for. He introduced evidence of a community debt of between seven and eight hundred dollars, besides interest for at least four or five years, secured, too, by a deed of trust on the lot sold, and evidence tending to show that this debt was intended to be paid out of the proceeds of the sale, and actually was so paid, the creditor releasing the interest.

It was the right of defendant to have the jury pass upon this defense. The charge of the court, however, in effect, excluded it from their consideration.

The jury are told: "It is admitted that J. C. Stenzel never qualified as surviving husband, so as to enable him to convey the community interest of his deceased wife, if said Caroline was his wife, in any lands owned by him at her death." They are further told, that if the evidence established that the lot sued for was the community property of J. C. Stenzel

and wife Caroline at her death, and that the plaintiffs were their only children, they would find for the plaintiffs, unless they found .the plaintiffs precluded, or their recovery modified, by the defense set up by Wenar, on which they were instructed in the subsequent part of the charge. The subsequent part of the charge contains no allusion to the defense that the sale was made for the purpose of paying a community debt. The defendant asked an instruction which embraced the following: "If you believe, from the evidence, that such debts" (community debts) "did exist, and that, in order to pay such debts, J. C. Stenzel sold, in good faith, the said lot to pay the same, or to reimburse himself after he had paid them, then the title of the purchaser would be good and valid." Even if this charge was connected with objectionable matter, it was sufficient to call attention to the subject. The action of the court, in the charge given, under these circumstances, was erroneous, and entitles the appellant to a reversal. (Chamblee *v.* Tarbox, 27 Tex., 139.)

Appellee .contends that the evidence shows that there was a large amount of personal property which should have been first sold, and that therefore the sale was unnecessary. But the only personal property disclosed by the evidence consisted of machinery used by Stenzel in his business. It may have been judicious and fair in him to sell the lot rather than the machinery, and as it appears that the lot was not susceptible of division, the fact that the proceeds of the sale ($4,200) largely exceeded the amount of community debts shown by the evidence, is not inconsistent with the conclusion that the sale was nevertheless fairly made for the purpose of paying such debts. There is no rule of law requiring, in such cases, the personalty to be exhausted before selling lands; nor was the court justified, by anything in the pleadings or evidence, in withdrawing from the jury the question as to whether the sale had been honestly made for the purpose of paying community debts.

There are other questions discussed, some of which are

settled by recent decisions of this court, to which it will suffice to refer. (Yancy *v.* Batte, *supra,* 46; Johnson *v.* Harrison, Id., 257.) As to the liability of the plaintiffs on account of the warranty of their father and their interest in his estate, it is scarcely probable that on another trial the extent of the interest so inherited will still be indefinite. It is, therefore, not deemed material to consider that branch of the case.

The judgment is reversed and the cause remanded.

Reversed and remanded.