be the measure of damages. Winne *v.* The Illinois C. R. R. Co., 31 Iowa, 587; Sterrett *v.* Laurimer, 34 Mo., 469. And to this would the appellees be entitled if the injury resulted from the negligence of the appellant?

For the errors indicated, the judgment is reversed and the cause is remanded.

REVERSED AND REMANDED.

[Opinion delivered June 19, 1883.

---

### A. M. WILSON v. M. C. & J. S. HELMS ET AL.

#### (Case No. 4722.)

1. ADVANCEMENTS — COMMUNITY PROPERTY. — Advancements made from the community estate to the children of the marriage during the life-time of the parents, create no liability on the part of such children to account therefor to the father out of their interests inherited from the mother. If they receive from the father of the community estate (otherwise than by purchase), after the death of the mother, they must account therefor on partition.

2. COMMUNITY PROPERTY. — The community property in its descent to the heirs is chargeable with the payment of community debts. A purchaser thereof from the survivor of the parents is protected when it is sold to reimburse him or her for separate means used in discharging a community debt; following Burleson *v.* Burleson, 28 Tex., 383; Johnson *v.* Harrison, 48 Tex., 257, and other cases.

3. PARTITION. — Though the heirs inherit from a deceased parent an undivided interest in all community property, yet the purchaser of an entire tract of land from the surviving parent may be protected against the claim of the heir, though the sale be irregular, if, in the partition of the entire estate, other property of equal value can be set aside to such heir.

4. SALE OF COMMUNITY. — The title of a purchaser of community property from the father, acquired by sale after the death of the mother, cannot be questioned by an heir for whose debt the community estate was liable through the father as surety of such heir, and which debt the purchase money received was applied to liquidate.

APPEAL from Collin. Tried below before the Hon. Joseph Bledsoe.

Suit in trespass to try title and for partition, brought by appellees for the community interest of the mother of Mary C. Helms, Elizabeth Roberts and W. B. Wilson. The appellant admitting that the land was the community property of James and Martha Wilson, ancestors of appellees, set up title by purchase from James Wilson, surviving husband, and alleging that the community estate of James and Martha Wilson was involved in debt at the date of the death of Martha Wilson, to parties and in sums unknown; that the land was sold to appellant by James Wilson for the purpose of paying off

such indebtedness, and that the money was applied to their payment. The money was borrowed from appellant in the first instance by James Wilson, and a deed of trust to secure the payment, with power of sale in the sheriff of Collin county, given to appellant, under which, upon default of Jas. Wilson, the land was sold and bought in by appellant.

Appellant further set up the fact that during the life-time of Martha Wilson advancements were made by James and Martha Wilson out of their community estate to each of their children — appellees — amounting to as much as, or exceeding, their respective shares in the entire estate, setting out a description of lands so advanced.

This allegation was stricken out by the court upon appellees' demurrer thereto.

Appellant also set up good faith, alleging that Jas. Wilson, surviving husband, had sufficient property in his hands to satisfy the claims of appellees. Citation to Jas. Wilson was prayed for, and it was asked that he be required to make an exhibit of the community estate; that the appellees be required to bring into hotch-potch all advancements received by them from the estate; and that thereupon the court ascertain the amount of the estate to which each was entitled, and whether said appellees, or either of them, had already received the amounts to which they were severally entitled; praying that in the event that appellees should be entitled to recover anything on account of their interest in the estate, and it should be found that a portion of said estate still remained in the hands of the surviving husband, James Wilson, then that judgment in their favor be first against such property. James Wilson appeared and filed general denial.

Judgment rendered in favor of appellees for thirty-seven acres of the land, that being one-half the amount of the land in controversy less twenty acres.

The character of the evidence is indicated by the opinion. It was lengthy and its detail would not make the case more plain.

*K. R. Craig,* for appellant.

*H. M. Garrett* and *R. De Armand,* for appellees, cited Johnson *v.* Harrison, 48 Tex., 257; Yancy *v.* Batte, 48 Tex., 57; Tiemann *v.* Robson, 52 Tex., 411; Magee *v.* Rice, 37 Tex., 500.

STAYTON, ASSOCIATE JUSTICE.— The fact that advancements may have been made to each of the children during the life of the

mother, out of community property, would not confer upon the father any interest in the share of the community estate which vested in the children on the death of the mother.

In so far as he gave of his own estate in community property, the children cannot be called upon to compensate him therefor by surrendering to him that which they inherited from the mother upon her death; and in so far as property which may have been advanced was of the community estate of the mother, her children take that purely as an advancement without liability to account, except as between themselves.

For community property conveyed to children after the death of their mother, unless by sale upon consideration, the father can have them account in partition, and thus protect purchasers from him, and protect himself against claims which children might set up on account of community property disposed of by him. Exceptions to the answer were sustained only in so far as the same sought to set up advancements made to the children during the life of the wife out of community property, and in this ruling the court did not err.

The evidence develops the fact that the land in controversy was community property of James Wilson, the father of the appellees, and their deceased mother, whose interest they now seek to recover; it also shows that, at the time of the mother's death, there was an outstanding note in favor of Nicholas M. Bell for $1,000, for which the community property was liable. This indebtedness arose by note of W. B. Wilson, one of the appellees, upon which James Wilson, his father, was a surety; and it appears that a large part of the money which was paid to the father for the land in controversy was used to make a payment on that note. There was also some other community indebtedness shown; and it appears that there was other land belonging to the community, some of which has not been sold; what other property of the community there may be does not appear.

As has been often said, heirs take community property charged with the debts against it; and if it be sold by the survivor for the purpose of paying community debts, or for the purpose of reimbursing the survivor for separate means used in discharge of such debts, then the purchaser will be protected in his purchase. Burleson v. Burleson, 28 Tex., 383; Johnson v. Harrison, 48 Tex., 257; Wenar v. Stenzel, 48 Tex., 484; Jones v. Jones, 15 Tex., 143.

A state of facts existed which empowered James Wilson to sell community property; and it would seem that a purchaser, who in good faith buys under such circumstances, should be protected in

his purchase against the claims of heirs, who take the property charged with the debts due by the community. The fact that all of the money which was received for the land may not have been used by the survivor for the purpose for which the law empowers the survivor to sell ought not to affect the title of the purchaser, when good faith and fair dealing exists upon his part; and especially so when, instead of forcing an administration upon the estate, the children, without objection, permitted the survivor to administer it, and thus apparently acquiesced in his acts, some of them taking titles to parts of the land from him, when they ought to have insisted on taking the same as a part of the interest to which they may have been entitled through inheritance from the mother, if the father had misapplied a part of the common estate.

It is true that the heirs of the deceased member of the community take title to an undivided interest in every acre of land owned by the community at the time of its dissolution; but it does not follow from this, if the survivor should sell a given tract, that the purchaser thereof would not be protected in his purchase fully, even if the sale was not made for an authorized purpose, if in the partition of the entire estate other lands or property of equal value can be given to the heirs.

Such is the rule among other tenants in common, and we see no reason why it should not be applied in cases where the surviving husband sells a part of the community property after the death of the wife.

The survivor cannot object to having land which he has so sold considered as a part of that to which he was entitled, and to having full compensation made to the heirs of the deceased member of the community out of other lands or property belonging to the estate.

In this case it appears that there are lands which belonged to the community not yet disposed of; and if it were true that the father was not authorized to sell the lands in controversy to pay debts, even then the purchaser from him should not be disturbed if an equitable partition can be made, and the appellees receive other lands or property equal in value to their interest in that sold to the appellant. Burleson *v.* Burleson, 28 Tex., 418; Johnson *v.* Harrison, 48 Tex., 257.

The money received for the land, in part at least, having been used to pay a debt for which W. B. Wilson was primarily liable, and for which the community, represented through the signature of James Wilson, his father, was only bound as surety, upon principle, W. B. Wilson cannot be heard to say, to the prejudice of the purchaser, that whatever title to the land he had did not pass by the

sale made to raise money to pay his debt, for which the land itself could have been subjected to sale by the creditor, and this even though, by some arrangement between him and his father, the latter had agreed to pay the debt.

From the record as presented, it does not now become necessary to decide whether the existence of community debts at the time of the sale of the land in controversy, which equalled, if they did not exceed, the value of the land, would not of itself be sufficient, without reference to how the money received from the sale was used, to give full protection to the purchaser. Johnson v. Harrison, 48 Tex., 268; Watkins v. Hall, 57 Tex., 2.

James Wilson, the vendor of appellant, is a party to this suit, as are all of the heirs of his deceased wife; and as there seem to be equities between him and W. B. Wilson growing out of contract between them, and between him and all the heirs, growing out of payment of community debts by him, and the final distribution of the community property, which must be made with reference to all these equities; and as it appears that the appellant can be protected in the title to the land which he bought from James Wilson through the adjustment of such equities as exist, which may be worked out in the distribution of the entire community estate, the judgment will be reversed and the cause remanded, that the same may be done; and in case the appellees decline to have such adjustment made, a judgment under the facts presented by the record should be rendered in favor of the appellant; and it is accordingly so ordered.

REVERSED AND REMANDED.

[Opinion delivered June 15, 1883.]