SANGER BROS. ET AL. v. HEIRS OF MRS. P. A. MOODY.

(Case No. 4890.)

1. COMMUNITY PROPERTY.— The principle again announced that the survivor of the marital relation has authority, without administration on the estate of the deceased spouse in any of the statutory modes, to sell community property to pay community debts which are a charge upon it; that the property thus sold is charged with the payment of debts contracted during the marriage.

2. STATUTE CONSTRUED.— The act of 1856 did not withdraw such power of sale from the survivor, but was intended to enlarge such power; following Lumpkin v. Murrell, 46 Tex., 58, and other cases cited.

3. CASES REVIEWED.— Wenar v. Stenzel, 48 Tex., 490; Veramendi v. Hutchins, 48 Tex., 552, and Johnson v. Harrison, 48 Tex., 266, reviewed, and the conclusion announced that a sale made in good faith by the survivor of the community of the common property to pay community debts, was valid, and the purchaser would be protected.

4. SAME — CASE REVIEWED.— Tillinghast v. Champlin, 4 R. I., 209–212, cited and reviewed, and the principle announced that the purchaser of community property under circumstances above stated is not bound in his own protection to see that the purchase money is applied to the payment of the community debts. It is essential, however, to the protection of the purchaser, that the consideration paid be not grossly inadequate, that there be no collusion or fraud to which he is a party, and that he have no knowledge of any intention to misapply the proceeds.

APPEAL from Navarro. Tried below before the Hon. John H. Rice, special judge.

The opinion states the case sufficiently to understand the principles announced and the facts to which they apply.

*Sawnie Robertson*, for appellants.

*Cloft & Blanding*, also for appellants.

*Read & Read*, for appellees.

STAYTON, ASSOCIATE JUSTICE.— That the land in controversy was community property owned by Louis Moody and his wife at the time of the death of the latter in 1863 is not questioned; nor can it be denied that at the time of the sale of the land, made by Louis Moody to N. A. Birge, through whom the appellants claim by regular chain of transfer, there existed at least one community debt amounting to between four and five thousand dollars. The record renders it highly probable that a much larger community indebtedness existed.

It is further admitted that all of the appellants were purchasers of the land for valuable consideration, paid without actual notice of any adverse title.

It appears that at the time of the death of Mrs. Moody the community estate was large, consisting chiefly of slaves and lands. Of the lands, there seems to have been eight or ten thousand acres; but it does not appear what disposition has been made of the same, except that the tract in controversy was sold to Birge, and two other small tracts, possibly, it not appearing whether they were of the community estate or not, were sold by Moody in 1868, to meet attorney's fees in bankrupt proceedings. The only testimony bearing upon the question as to what property the children of Mrs. Moody have received from the community estate or from Louis Moody is found in the evidence of W. R. Moody, who testified " that his father never gave his children any property since the death of their mother that witness knows of."

Soon after the sale of the land in controversy by Louis Moody to Birge, the former voluntarily instituted proceedings in bankruptcy, and in November, 1869, received his discharge.

The papers in the bankrupt proceedings were destroyed by fire, and hence copies of the schedules, showing the assets and liabilities and receipts and disbursements from the bankrupt estate, could not be obtained; and the court excluded so much of the evidence of one of the attorneys who represented Moody in the bankrupt proceeding, as tended to show what property was returned by him as part of his estate, receipts from the sale thereof and disposition made of the proceeds.

The testimony thus excluded tended to show that Moody re-

ported an indebtedness of $20,000 or more, consisting of debts incurred from 1859 forward, and that his assets consisted of notes and accounts and some tracts of land; and that from the assets, money sufficient to pay the costs of the proceedings in the bankruptcy court was not realized, but that the same were paid by Louis Moody, and amounted to about $175.

The record shows that Louis Moody received from Birge for the land in controversy a wagon and some mules; but the deed recited a consideration of $320. It does not appear what the actual value of the land was at the time it was sold to Birge; nor does it appear when any of the children of Mrs. Moody became of age, except W. R. Moody, who was about ten years of age at the time the land was sold to Birge.

The cause was tried without a jury and judgment was rendered in favor of the plaintiffs for one-half of the land, and partition directed to be so made as to give to the appellants, who had made valuable improvements on the land, the land covered by their improvements.

It is claimed that as community indebtedness was shown to exist at the time the land was sold by Louis Moody to Birge, the sale should be held valid.

Under the repeated decisions of this court it must be held as conclusively settled, that the survivor of the marital relation, without administration upon the estate of the deceased member in any of the modes expressly provided by statute, has power as survivor to sell the community property for the purpose of paying debts which are a charge upon it, and by law such property is charged with the payment of debts contracted during the marriage. Pasch. Dig., 4646.

It has been properly held that the act of 1856 did not withdraw such power from the survivor; but that the act was intended to enlarge the powers of the survivor. Wenar v. Stenzel, 48 Tex., 489; Dawson v. Holt, 44 Tex., 178; Lumpkin v. Murrell, 46 Tex., 58.

The act itself seems to recognize in the survivor such a power, and that its exercise will not be disturbed upon failure to comply with the act, unless upon complaint by some one having an interest in the estate. Pasch. Dig., 4649, 4650.

And it would seem that, when those interested in an estate interpose no objection to the management and control of a community estate by the survivor without qualification under the statute, that purchasers from such survivor, if there be community debts bearing a reasonable proportion to the value of the property sold by a survivor, ought not to be disturbed in their titles acquired in good faith; for, in the absence of such interposition, purchasers may well

believe that those interested in the estate are content that the survivor shall exercise the powers which he possesses to sell property to raise means with which to discharge debts which are a charge upon such property, and for which the survivor is liable personally, without reference to whether there be community property or not, and without the satisfaction of which heirs, as against the survivor, have no right, either legal or equitable, to take and hold any part of the common property.

In a number of cases it has been said that if community debts exist, the power in the survivor to sell exists. In the case of Wenar v. Stenzel, 48 Tex., 490, the court was asked to instruct the jury as follows: "If you believe from the evidence that such debts (community debts) did exist, and that in order to pay such debts, J. C. Stenzel sold, in good faith, the lot to pay the same, or to reimburse himself after he had paid them, then the title to the purchaser would be good and valid." No equivalent charge having been given, this court in effect held that the refusal to give the charge was error. In that case property estimated to be worth $14,000 had been sold by the survivor, and there was proof of a community indebtedness amounting to about $800, which the evidence rendered it probable had been paid out of the proceeds.

In Veramendi v. Hutchins, 48 Tex., 552, it seems to have been assumed that if the existence of community debts was shown or could be presumed, that the purchaser from the survivor would be protected without proof as to the appropriation of the proceeds of sale.

In the case of Johnson v. Harrison, 48 Tex., 268, it was said: "If there be community debts, the survivor of the community may appropriate community property to their payment; and his power to wind up the community affairs is so far recognized, that sales fairly made by him for that purpose will not be set aside. His power to sell is dependent on the existence of some claim against the community, and whoever purchases from him must see to it that the facts exist which authorize the sale."

The record before us evidences the existence of community debts at the time the sale was made to Birge, far exceeding in amount the estimated value of the land at the time it was sold, if we take the consideration named in the deed as its value at that time, and under the decisions it must be held that this fact gave to the survivor the power to sell, and it only remains to inquire whether it is incumbent upon purchasers to show that the proceeds of the sale were actually applied to the payment of such debts.

As before said, the law imposes a charge upon the community property for the payment of the community debts, and the survivor is empowered to sell it for that purpose; so, in this respect, the power stands upon grounds as favorable to purchasers as though the charge was created by act of a person.

The general rule is thus stated: "The general principle of courts of equity in regard to the duty of purchasers (not especially exempted by any provision of the author of the trust), in cases of sales of property, or charges on property under trusts (for there is no difference, in point of law, between sales and charges), to see to the application of the purchase money, is this: that, whenever the trust or charge is of a defined and limited nature, the purchaser must himself see that the purchase money is applied to the proper discharge of the trust; but, whenever the trust is of a general and unlimited nature, he need not see to it. Thus, for example, if a trust is created to sell for the payment of a portion, or of a mortgage, there the purchaser must see to the application of the purchase money to that specified object. If, on the other hand, a trust is created, or a devise is made, or a charge is established, by a party for the payment of debts generally, the purchaser is exempt from any such obligation." Story's Equity, 1127.

In a succeeding section the learned author gives utterance to a feeling of discontent with the rule which requires the purchaser to see to the application of the purchase money in any case, and gives it as the conclusion of eminent jurists and judges, "that it would have been far better to have held in all cases that the party having the right to sell had also the right to receive the purchase money, without any further responsibility, on the part of the purchaser, as to its application." Sec. 1135.

The power of the survivor is certainly a general power to sell for the purpose of paying any and every debt the community estate may owe.

Upon this question, in reference to the sale of copartnership property by a surviving partner, a case quite analogous to that of a sale by the survivor of the community, the supreme court of Rhode Island presents the question so clearly that we feel authorized largely to quote it. The court say: "Beyond a doubt, a *bona fide* purchaser or mortgagee of partnership lands, who obtains the legal title from the person in whom it is vested, without notice of the equitable rights of others in the property, as a part of the funds of the copartnership, is entitled to protection in courts of equity as well as in courts of law. . . . Holding, as we do, that this real estate was co-

partnership property, the legal title to the undivided half was held by the surviving partner, according to every authority upon this subject, English and American, cited on either side, in trust, for the payment of the debts of the firm, and of any balance that might be due to the estate of the deceased copartner upon the settlement of the partnership accounts. For the purpose of executing this trust, though but half the legal title was vested in him, the surviving partner had the right in equity to sell the whole beneficial interest in the estate; and a court of equity would assist the purchaser by contract, to get in the legal title to the other half from the heirs at law of the deceased copartner, even though they be infants (Delmonico v. Guillaume, 2 Sandf. Ch., 366–368, and cases cited; Dyer v. Clark, 5 Metc., 576; Howard et al. v. Priest et al., id., 585; Burnside et al. v. Merrick et al., 4 Metc., 540, 541, 545; Andrews v. Brown, 21 Ala., 437; McAlister v. Montgomery, 3 Hayw., 94); . . . and a court of equity will not interfere most surely with this exercise, which duty imposes, or his said claims justify, of his *jus disponendi*. So far from it, it will, as we have seen, if the legal title be in part only vested in him, or be wholly vested in another, assist him in the exercise of his rights, by compelling the conveyance of the legal title to himself, or to a purchaser from him, when such conveyance is needed to enable him to perform his duty to others, or to satisfy even the demands that *he* may have as copartner upon such property of the firm. In such case, the purchaser, though he know that he has purchased copartnership property, and that there are copartnership debts to be paid out of it, yet if he honestly buy the property of and pay for it to the surviving partner, with no knowledge of, and under circumstances from which a court of equity implies no notice of, an intended misapplication by the partner of the proceeds of sale, will not be liable on account of any fraud, default or miscarriage of the surviving partner with regard to them. It is a strict logical sequence, that the right to dispose of such property on the part of the surviving partner implies and requires the right to buy it on the part of an honest and careful purchaser; nor is this, as has been contended before us, one of that class of trusts in which, notwithstanding the power of sale on the part of the trustee or surviving partner, the purchaser knowing that he is purchasing trust property, is bound to see to the application of the purchase money; or, in this case, to see that it is applied to the payment of the copartnership debts." Tillinghast v. Champlin and others, 4 R. I., 209–212.

To the same effect is the case, *In re* Langmead's Trusts, 20 Beav.,

24. The cases bearing upon the question will be found collected in the notes to Elliott *v.* Merryman, 1 Leading Cases in Equity (4th Am. ed.), 78–120, and sustain the proposition that the purchaser under sales such as the present is not bound to see to the application of the purchase money.

It is, however, essential to the protection of such purchaser that he pay a consideration such as does not give rise to the conviction that the sale was not fairly made; and it must be made without any collusion between him and the seller to defraud other persons who are interested; and it must be made without knowledge of any intention of the seller to misapply the proceeds.

The property in controversy was not sold for money, but was exchanged for other property, and if the property remained in the hands of the original purchaser there might be some question as to the propriety and validity of such a transaction by a survivor; however, in a given case, such an exchange might be a legitimate method of realizing money indirectly for the purpose of paying debts.

The deed to Birge upon its face purported to be for a moneyed consideration paid, and the property has since passed through several hands, and to persons who have paid valuable considerations for it without actual knowledge of adverse claim; and while all this was going on the appellees made no claim for about fourteen years, during which time their father had by the proceeding in bankruptcy, the expenses of which seem to have been paid by himself, practically discharged the debts against the community.

We conclude that under the facts proved the survivor had the power to make the sale, and that the purchasers were not bound to see to the application of the purchase money, and that their title to the land should have been sustained.

This will lead to the reversal of the judgment, and as there is no probability that a stronger case could be made by the appellees were the cause remanded, judgment will be here rendered that they take nothing by this action, and that the appellants recover the costs of this court and of the court below.

Reversed and rendered.

[Opinion delivered June 29, 1883.]