HORAN et al. v. O'CONNELL et al.

(Court of Civil Appeals of Texas. San Antonio. Feb. 7, 1912. On Motion for Rehearing, March 6, 1912.)

1. HUSBAND AND WIFE (§ 273*)—RIGHTS OF SURVIVOR—SALE OF COMMUNITY PROPERTY.

The surviving spouse may sell the community estate to pay community debts, though it be sold for more than enough for that purpose, the rule being peculiarly applicable, where the debt is against the homestead.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1008–1024; Dec. Dig. § 273.*]

2. ADVERSE POSSESSION (§ 41*)—SUFFICIENCY OF POSSESSION.

One who took possession of land under a recorded deed, and paid taxes, and used it for more than ten years as his own, acquired title by adverse possession under the five and ten year limitations.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 184–206; Dec. Dig. § 41.*]

3. HUSBAND AND WIFE (§ 273*)—RIGHTS OF SURVIVOR—SALE OF COMMUNITY PROPERTY.

A deed made by heirs to their mother upon the death of their father, conveying to her a life estate for the purpose of enabling her to take possession without the aid of the court and to prevent partition during her lifetime, did not prevent her from selling community property to pay community debts.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1008–1024; Dec. Dig. § 273.*]

On Motion for Rehearing.

4. LIMITATION OF ACTIONS (§ 103*)—ADVERSE POSSESSION—REPUDIATION OF TRUST.

One to whom land was conveyed for life by afterwards selling it for its full value repu-

diated any trust in her under the deed conveying the life estate, so as to put her grantors upon notice that absolute title was claimed, so as to make limitations begin to run upon the subsequent vendee entering and taking possession.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 506–510; Dec. Dig. § 103;* Trusts, Cent. Dig. § 570.]

Error to District Court, Matagorda County; Wells Thompson, Judge.

Action by Minnie E. Horan and others against Michael O'Connell and others. Judgment against plaintiffs and for a part of defendants, and plaintiffs bring error. Affirmed.

J. R. Norton and Ed. Haltom, for plaintiffs in error. Gaines & Corbett, for defendants in error.

FLY, J. This is a suit by Minnie E. Horan, joined by her husband, C. Horan, Jennie J. Storey, and husband, Harry Storey, Estella Helman and George Helman, as next friend of Bennette Helman, a minor, against Michael O'Connell, Daniel O'Connell, and Nora O'Connell, his wife, John O'Connell, Mike J. O'Connell, Belle C. Johnson, and Simon P. Johnson, to recover their undivided interests in and to four certain tracts of land in Matagorda county. The cause was tried upon an agreed statement of facts, and without a jury, and resulted in a judgment that the plaintiffs in error, who will be referred to herein as plaintiffs, take nothing by their suit, and that the defendants in error Michael O'Connell, Nora O'Connell, and her husband, Daniel O'Connell, named herein defendants, recover of the plaintiffs and Mike J. O'Connell, John O'Connell, Belle C. Johnson, and Simon P. Johnson, the land in controversy. The last four named persons had disclaimed all interest in the land.

The lands in controversy were the community property of Phillip and Mary O'Connell, the ancestors of the plaintiffs and defendants. On September 8, 1886, Phillip O'Connell died intestate, leaving his wife, Mary, and eight children. On September 18, 1886, seven of the children, the other being crazy and since dead, conveyed a life interest in all of the estate to their mother, Mary O'Connell, reciting that the consideration for the conveyance was the wish "to settle among ourselves without the intervention of the law and the courts of the county." On December 7, 1887, Mary O'Connell conveyed the land to W. P. O'Connell for $1,400, and on June 18, 1892, it was conveyed by W. P. O'Connell to Michael O'Connell, the father of Mike and Dan O'Connell, defendants herein, and they are the only heirs and legatees of Michael O'Connell, deceased, and Dan O'Connell conveyed all his interest in the land to his wife, Nora. The $1,400 received by Mary O'Connell for the land was its reasonable value, and it was used by her in paying off an incumbrance on the homestead property in San Antonio, Tex., which was a community debt. The homestead was recognized and described as being lot 30, block 4, frontage on Avenue D, in the deed made by the heirs of Phillip O'Connell to Mary O'Connell on September 18, 1886. The homestead, after the death of Mary O'Connell, was sold, and its proceeds distributed among the heirs of Phillip O'Connell. When Michael O'Connell, Sr., bought the property from W. P. O'Connell, on June 17, 1892, he immediately entered into actual possession of it and continued to use and enjoy the same, paying taxes thereon until the day of his death, which occurred more than ten years after he entered into possession of the land.

[1] When Phillip O'Connell died leaving community debts, his surviving wife, Mary O'Connell, had the power and authority to sell any property of the community estate and with the proceeds settle the community debts. The surviving husband or wife has the right to sell the community estate for the payment of community debts, and it would not matter that the property was sold for more than enough to pay off the debts. Johnson v. Harrison, 48 Tex. 257; Wenar v. Stenzel, 48 Tex. 484; Watkins v. Hall, 57 Tex. 1; Ashe v. Yungst, 65 Tex. 631; Sanger v. Moody, 60 Tex. 96; Walker v. Abercrombie, 61 Tex. 69; Manchaca v. Field, 62 Tex. 135; Moody v. Snoot, 78 Tex. 119, 14 S. W. 285; Jones v. Harris, 139 S. W. 69. The rule has peculiar force when the debt is against the homestead and the money realized from the sale of the other land is used to protect the homestead.

[2] It is not controverted by plaintiffs that Mary O'Connell conveyed the title to the land in fee to W. P. O'Connell, and when his vendee recorded his deed, went into possession of the land, and paid taxes on it, and used it, his possession was adverse to the claim of plaintiffs, and title by both five years and ten years limitations was perfected by him.

[3] The deed made by the heirs to their mother did not deprive her of the right to sell the community property to pay community debts. She did not relinquish any rights whatever by accepting the deed.

The judgment is affirmed.

### On Motion for Rehearing.

It is earnestly contended by plaintiffs that the trial court, as well as this court, ignored the law of contracts and conveyancing in construing and passing upon the instrument executed by the heirs of their mother. The instrument is as follows: "The State of Texas, County of Bexar. Know all men by these presents, that whereas Phillip O'Connell died Sept. 8th, 1886, leaving no will, and we wishing to settle in full among ourselves without the intervention of the law and the courts of the County, and Mrs. Mary O'Connell, be-

ing the widow of and surviving wife of Phillip O'Connell, dec'd, is entitled to the homestead in connection with Misses Maggie, Minnie and Jennie, unmarried daughters, it being lot No. 3, block No. 4, fronting on Avenue 'D', together with all improvements on said lot. It is our intention and wish that Mrs. Mary O'Connell keep and retain control of all the property of all kinds and character, whether real, personal or mixed that said Phillip O'Connell died seised and possessed of, it being our intention and wish that this shall be a full and complete settlement of the estate of Phillip O'Connell, dec'd, and we, John O'Connell, Wm. O'Connell, Simon P. Johnson and Belle C. Johnson, his wife, formerly Belle C. O'Connell, Maggie O'Connell, Minnie O'Connell and Jennie O'Connell, have this day and by these presents do grant, sell, bargain and convey unto Mrs. Mary O'Connell all the right, title and interest we have or may have in and to all the property, real, personal and mixed that belongs to or was the property of Phillip O'Connell, deceased, at the time of his death unto the said Mary O'Connell, during her natural life, to be used and enjoyed by her as to her may seem proper for her own benefit, and use, free from all claims of any kind or character that we have or may have in and to said property, conveying it to her during her natural life, and we agree that she shall be and keep in possession all of said property." The only consideration expressed in that document is the desire to settle the estate "without the intervention of law and the courts of the county," and we conclude, in the absence of any testimony explaining the consideration, that the parties labored under the impression that the instrument was necessary to empower Mrs. Mary O'Connell to take possession of and administer the community estate, without invoking the aid of a probate court, as well as to prevent a partition of the same during her lifetime. The instrument recognized the fact that their mother and her minor children were entitled to the homestead, which they must have known was incumbered with a vendor's lien, and must have known that, in order for it "to be used and enjoyed by her as to her may seem proper for her own benefit," it would be necessary for her to sell community estate to pay off the lien on the homestead. It is not shown that the mother had anything with which to pay off the lien, and it would have been a solemn mockery to have taken from her the power to sell the community property to satisfy the lien. No effort was made to explain the consideration for making the deed, and it is evident that Mrs. Mary O'Connell did not construe the deed or transfer as do the plaintiffs, for in little more than a year after the instrument was executed she sold the land and applied the proceeds in discharging the vendor's lien on her home, and for more than ten years there is nothing to indicate that there was any dissatisfaction with the act of the mother in selling the land. It was agreed that the land was sold to Michael O'Connell, through whom defendants claim, that he went into actual possession of the property in controversy, having paid the reasonable value of the same, that he paid all taxes and used and enjoyed the land to the time of his death, and that since his death his heirs have occupied the land and used and enjoyed the same, and paid the taxes thereon. It was agreed that, unless the deed of Mary O'Connell prevented it, defendants had title by limitation.

[4] When the property in controversy was sold to W. P. O'Connell in 1887 for its full value by Mrs. Mary O'Connell, she thereby repudiated any trust confided in her by and through the conveyance made to her by her children, and they were put upon notice, the title to the land, and not a life interest in it, was conveyed, and, upon the vendee entering into possession, the statute of limitations began to run, and title by limitations was perfected before suit was instituted by plaintiffs on May 11, 1909. It was agreed by plaintiffs that Mary O'Connell received the sum of $1,400 for the land purchased by Wm. P. O'Connell, "and used such money to pay off the incumbrance upon the homestead property in San Antonio, which was a community debt described in the instrument executed by Maggie O'Connell et al., on September 18, 1886, and upon the final sale of such property the proceeds of the homestead were distributed among the heirs of Phillip O'Connell, deceased." That is, the money from the land claimed by plaintiffs was paid out on the homestead, and that homestead was afterwards sold, and plaintiffs received their portion of it. If they should recover the land in controversy, they would receive the benefit of the value of the land a second time. To escape the opprobrium of that undesirable position, they argue that, while there is nothing in the testimony to indicate it, their mother, in consideration of a deed that was utterly valueless to her, must have agreed to pay off all community debts. That would have been a hard contract to have made with any old widow, and more especially with their mother. But there is no evidence that she ever entered into any such unconscionable contract. She had nothing to gain and all to lose by such a contract. The record fails to show that Mary O'Connell was a party to the transfer or that it was ever delivered to her, and, if it was ever recorded, the evidence fails to disclose it. W. P. O'Connell doubtless knew of the execution of the conveyance, but he must not have construed it as do plaintiffs, or he would not have bought the land from Mary O'Connell, and have paid her the full value of it. There is nothing in the record that indicates that Michael O'Connell had any knowledge, actual or constructive, of the existence of the instrument executed by plaintiffs.

The motion for rehearing is overruled.